Peter Dumoss et al., Plaintiffs in Error, *v.* Frederick N. Francis, Defendant in Error.

15 543
160 525
15 543
158 228
15 543
69a 329

### ERROR TO ROCK ISLAND.

Where an order establishing a road is introduced in evidence, it is unnecessary, in the first instance, to go further and show that the previous steps required by the statute have been taken.

The presumption in such case is, that the preliminary proceedings were regular, and such as justified the order of the court establishing the road.

The law of 1835 did not require a survey of the road to be made and filed, but provided that the viewers should designate the course of the road by stakes, marked trees, &c., and the landmarks made by them, and not their report, will control in determining the locality of the road.

The fact that a road is but little used, does not authorize a party to close it up.

This cause was heard before Wilkinson, Judge, without the intervention of a jury, at November term, 1851, of the Rock Island Circuit Court.

Manning & Douglas, for plaintiffs in error.

N. H. Purple, for defendant in error.

Treat, C. J. This was an action of trespass *quare clausum fregit*, brought by Francis against Dumoss and others. The declaration alleged in substance, that the defendants, on the 7th of October, 1850, broke and entered the close of the plaintiff, situated in the county of Rock Island, and described as the north-west quarter of section twenty-nine, in township sixteen, north of range five west. The defendants pleaded three pleas: 1. Not guilty. 2. That there was a public highway over the close; that the same was obstructed by the plaintiff; and that the defendants, having occasion to pass over the highway, removed the obstruction. 3. That the owners of the close dedicated to the public use a highway across the same; that the plaintiff obstructed the highway; and that the defendants removed the obstruction, having occasion to pass along the highway. The plaintiff replied to the second plea, that there was not a public highway over the close; and to the third plea, that the owners of the close did not dedicate to the public use a highway across the same. These issues were heard by the court on the following evidence. The plaintiff proved that he was the owner of the land and in possession thereof at the

time stated in the declaration; and that the defendants, on that day, opened the fences and passed across the land, the damages amounting to $2.

The defendants then read in evidence an order of the commissioners' court of Rock Island county, made at the September term, 1836, in these words: " On petition of many signers, citizens of Rock Island county, for a road commencing at Clark's ferry, and passing through the settlement between Copperas Creek and the Mississippi River to Drury's mill on Copperas Creek, and from thence to the line of Rock Island county, to meet a road running from New Boston to the line of Mercer county, and in the direction of said mill; it is therefore ordered, that Benjamin Vannatta, H. N. Oston, and Isaac B. Essex be appointed viewers to view the ground proposed for the same; and if after such view, the viewers shall believe the road applied for be necessary, they shall proceed to locate the same upon the nearest and best route, designating its course through prairie and improved land by fixing stakes in the ground, and through timber land by marking the trees, and make report thereof to the next county commissioners' court."

They also read another order of the same court, entered at the December term, 1836, as follows: " The viewers that were appointed at the last term to run a road, commencing at Clark's ferry and passing through the settlement between Copperas Creek and the Mississippi River to Drury's mill on Copperas Creek, and from thence to the line of Rock Island county, to meet a road running from New Boston to the line of Mercer county, and in the direction to said mill, made the following report: ' The undersigned having been appointed to view and mark out a road, commencing at Clark's ferry, running west on River street to the line of Bennett's addition to the town of Brockport; thence south to Second street; thence west near the Mississippi River to the south side of Stonecoal Creek; thence a southerly direction to section five, in township sixteen, north of range three west; and thence south on the west line of said section five to the section cornering between five and six, seven and eight; thence west on the section line between six and seven nearly half a mile; thence a south-westerly direction to the half quarter line on section seven between Moses and John Titterington; thence west on said line to section ten; thence angle north-westerly through sections nine, eight, seven, twelve, eleven, and on ten; thence south-westerly to Drury's mill; thence south and east to the line of Mercer county, and meeting the road leading from New Boston to the line of Rock Island county; and we find the route to be good, and believe the road

Dumoss et al. *v.* Francis.

one of much service and benefit to the settlement and public:'
Ordered, that the above be established as a public road."

The defendants then called Essex, one of the viewers, who
testified, that the road in question was the first located in that
part of the county; the viewers designated its course through
prairie and improved land by fixing stakes in the ground, and
through timbered land by marking the trees; there were then
scattering trees on the plaintiff's land, but they had since been
cut down; the viewers located the road across the plaintiff's
land, and indicated its course by marking trees standing thereon;
the road from the time of its location remained open until about
the day the trespass was committed, but for the last few years
was not much travelled; the course of the road was south-
west from Drury's mill to the Mercer county line, and no part
of it between those points runs in a south-east direction.

S. Drury testified that he accompanied the viewers when they
located the road; the course of the road across the plaintiff's
land was designated by marking some trees standing thereon,
but which have since been cut down; the road had been trav-
elled until a few days before the alleged trespass, when the
plaintiff erected fences across the same; it had frequently been
worked under the direction of the supervisors. M. Drury tes-
tified, that he was present when the road was located, and its
course across the plaintiff's land was indicated by marking
trees; it continued open until about the time of the trespass,
and had been worked by supervisors at different times.

The plaintiff then proved by Prentiss, that the road had been
travelled but little for many years; that a road running south
and east from Drury's mill would not pass over any portion of
the plaintiff's land. J. Phillips and M. Sequatt testified, that
the road running south-west from Drury's mill had been gener-
ally considered as made by the travel of the neighborhood, and
they had never known it to be worked as a county road; a
road running south and east from Drury's mill would not touch
the plaintiff's land. J. Sequatt and C. S. Bean testified, that
they had each been supervisor of the road district for one year,
and did not work upon any road running south-west from
Drury's mill, no such road being included in the description of
the roads in the district.

The court found the issues for the plaintiff, and rendered
judgment in his favor for $2. The defendants sued out a writ
of error.

By the act of the 3d of March, 1835, county commissioners'
courts were authorized to establish public roads within their re-
spective counties, not less than thirty nor more than fifty feet

46*

wide, upon the application of thirty-five voters in counties containing three hundred voters, and upon the application of fifteen voters in counties containing less than three hundred voters. The act required twenty days' notice to be given of the application. Upon such application being made for a road, the act required the court to " appoint three suitable persons to view the ground proposed for the same, and if, after such view, the viewers shall believe the road applied for to be necessary, they shall proceed to locate the same upon the nearest and best route, having due regard to private property, designating its course through prairies and improved land by fixing stakes in the ground, or by ploughing furrows at the distance apart of the full width of the road, and through the timbered land by marking the trees, and make report thereof."

The record evidence showed an application for the road, an appointment by viewers to examine the proposed route, a decision of the viewers that the road was necessary, a location of the same by them, and an order of the court establishing the road so located. This was sufficient to show that the road was established by competent authority. It was not necessary to prove that the preliminary proceedings were regular; as that the application was made by a certain number of voters, or that the requisite notice of the application was given. The presumption was that those proceedings were regular, and such as justified the order of the court establishing the road. It was expressly decided in the case of Nealy *v.* Brown, 1 Gilman, 10, that where an order establishing a road is introduced, it is unnecessary, in the first instance, to go further and show that the previous steps required by the statute have been taken. See also Ferris *v.* Ward, 4 Gilm. 499. It was, therefore, proved by the defendants, that the road had been legally established.

The next question in the case is, whether the road was located across the plaintiff's land. The report of the viewers states that the road runs south and east from Drury's mill to the line of Mercer county; and the witnesses testify that a road running south and east from the mill to the county line would not pass over the land of the plaintiff. The phrase " south and east," as used in the report, is a very indefinite expression. It does not indicate, with any degree of certainty, the route of the road. A surveyor could not determine its locality from the report. But this description may be disregarded for uncertainty; and other evidence may be resorted to for the purpose of ascertaining the precise location of the road. The law of 1835 did not require a survey of the road to be made and filed. It made it the duty of the viewers to designate the course of

the road, by marking trees, fixing stakes, or ploughing furrows. And where the viewers reported erroneously as to its course, the landmarks made by them, and not the report, would govern in determining the locality of the road. The proof is abundant to show that the road was laid out through the plaintiff's land. Persons present at the time the location was made, expressly testify, that the road was laid out over his land, and that its course was designated by marking trees standing thereon. It further appears that the route thus indicated, was worked and travelled as a public highway for fourteen years. It was competent to prove the location of the road by this kind of evidence. Eyman *v.* The People, 1 Gilm. 4; Nealy *v.* Brown, Ib. 10. The proof showed that the road was located and established across the plaintiff's land. The fact that it was but little used as a public highway, gave the plaintiff no authority to fence it up. He should have applied to the county court for an order vacating it. It was the legal right of any one passing along the road to remove the obstruction. On the evidence, the defendants were entitled to judgment.

The judgment is reversed, and the cause remanded.

*Judgment reversed.*