## The Commissioners of Highways, etc., Impleaded, etc., v. The People ex rel., etc.

1. ROADS AND BRIDGES—*Presumptions in Favor of Legality of Proceedings to Establish Road.*—Where an order of the proper authorities establishing a road is shown, the presumption is that the preliminary proceedings were regular, and such as justified the order of the court establishing the road.

2. SAME—*Use of Road for Fifteen Years Establishes Legality.*—After a road has been continuously used as a highway and recognized and maintained by the road authorities for a period of fifteen years, it becomes a lawful public highway under Sec. 1 of Chap. 121, R. S., regardless of any irregularities that may have occurred in the proceeding for its establishment.

3. SAME—*Authority of Commissioners of Highways in Regard to Repairs.*—Commissioners of highways have no right, in the exercise of a supposed discretion, to practically vacate a public highway by volun-

tary neglect to repair its defects until they become irreparable, nor to determine absolutely whether a defect is irreparable, and if not so in fact, are bound to repair in such manner as they may deem best, with whatever means they may have or can control, applicable thereto in view of other and proper demands upon them. Their judgment is not authoritative or conclusive and must give way to a greater weight of evidence to the contrary.

**Mandamus,** to compel highway commissioners to repair a bridge. Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 19, 1896.

S. R. REED and A. C. EDIE, attorneys for appellants.

W. C. JOHNS, attorney for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

This was a petition for mandamus to compel the commissioners of highways of the towns of Willow Branch in Piatt, and Whitmore in Macon counties, to repair a bridge over the Sangamon river, on the line of an alleged public highway between those towns.

It sets forth that the relators are residents of Macon county, excepting one, who resides in Piatt, and all own land in the vicinity of the bridge therein mentioned; that on January 31, 1876, the commissioners of said towns made an order locating and opening the highway described, which has ever since been maintained and used as such; that some time in 1879 the commissioners of said towns agreed that a bridge should be built over the Sangamon river, on the line of said highway, and be maintained and repaired at the joint expense of said towns, and that it was so built, and on September 3, 1879, accepted by the commissioners, and has been so maintained ever since until lately, when it has become dangerous; that for the last year the commissioners have neglected to repair it though they had means sufficient therefor; that it was unsafe and unfit for public travel and has been so declared by the commission-

ers themselves; that the petitioners have requested those of both the towns to repair and maintain it, but they have refused; that those of Whitmore have levied a tax for the express purpose of meeting its share of the expenses, but those of Willow Branch refuse to levy any sum whatever for it; that both have money in their hands but refuse to use any of it for repairing the bridge; that the equalized valuation of property in Willow Branch for 1894 was $551,024, and the levy for road and bridge purposes forty cents on the $100; that such valuation for Whitmore was $384,324, and the levy for road and bridge purposes was the same as in Willow Branch; and that the commissioners of that town have on hand money enough to pay and are ready to pay its just proportion of the expense for repairing said bridge.

The appellant commissioners answered, denying that they ever joined in making an order locating and opening a highway described in the petition; admitting that the alleged road is between the towns and over the Sangamon river as stated, and has been used for many years, but deny that it was lawfully opened; denying that in 1879, or at any other time, the commissioners of the two towns entered into a contract to build, maintain and repair the bridge in question at the joint expense of said towns; admitting that the bridge is unsafe and they have refused to repair it; but denying that they have funds so to do.

They say that Willow Branch is working under the road labor system, and in addition to the annual levy of forty cents on the $100 they levied twenty cents on the $100 under that system, and deny that they have any money that they may use for repairing said bridge or have power to make an additional levy; that said bridge can not be repaired, but a new one would be necessary and they have no money nor any authority to make a levy for such purpose; that the levy of road and bridge tax in that town for two years last past has been for the full amount allowed by law, and all was needed and used for the ordinary repairs of roads and bridges therein; that said road is not a

public necessity; that they have provided ample means for the public to cross the Sangamon river, and that a bridge at the point mentioned in the petition will be a needless expense.

The answer was amended, on leave given, by setting up the statute of frauds as to the alleged contract for the building of the bridge.

On a trial by the court without a jury the finding was for the relators, a new trial denied and judgment rendered, awarding a writ of mandamus as prayed, and costs, to which exception was taken, and from it this appeal is prosecuted, in which, however, the commissioners of Whitmore do not join.

Appellants insist that the road was never lawfully established, for want of due notice of the meeting on January 31, 1876, to hear reasons for and against it, which was jurisdictional, and of the meeting on February 5, 1876, when the final order establishing the road was made, nor had the aggregate amount of damages to land owners then been ascertained.

Neither of these alleged irregularities is affirmatively shown by the record, and in the absence of such showing is not to be presumed against an order of the proper authority establishing the road. Nealy v. Brown, 1 Gilm. 14; Dumoss v. Francis, 15 Ill. 543; Galbraith v. Leittich, 73 Id. 209. It does not appear that any records relating to this road were kept or made by the town clerk of Willow Branch. Those of Whitmore were meager and informal, but the abstract shows one, admitted without objection, that on January 31, 1876, the commissioners of both towns met at the residence of George Peck, ten days' notice (which was all that the law required) having been given, to hear reasons for and against the petition, and having personally examined the route and heard reasons for and against it, the petition was granted and the decision publicly announced. There was then time for a five days' notice, which the law prescribed, of the meeting of February 5th, at which the final order was made, and the presumption that it was given should be

indulged. The record of the filing of the surveyor's report and plat of that date was also admitted without objection shown. It appears that the agreement between the commissioners and J. R. Chambers, as to the amount of the damage to his land, and the release of damages by all the other land owners, so far as known to the petitioners for the road, bore date of August 14, 1876, but it is not improbable that they were all ascertained and agreed on at the meeting of January 31st.

The proof is that the bridge was built by K. N. Hankins, under a verbal agreement with the commissioners made July 19, 1879, and the grading done by the same party under a like agreement of September 20th. If these agreements should have been in writing, as appellants say the law required, they were nevertheless fully executed on both sides. The bridge was accepted on September 3, 1879, and soon afterward paid for in full by the commissioners. It is therefore too late for their successors to object on the ground suggested.

Moreover, whatever irregularities may have intervened in the proceedings for the establishment of the highway under the State, it is proved and admitted, that from the time the bridge was built, it has been continuously and largely used by the public as a highway, worked by the road authorities of both the towns, maintained at their joint expense and never lawfully vacated. By virtue of such use and recognition for a period of more than fifteen years, it became a lawful public highway under the first section of Ch. 121 of the Revised Statutes.

Commissioners should not be allowed, in the exercise of a supposed discretion, to vacate, in effect, a public highway, by voluntary neglect to repair its defects until they become irreparable. They have no such discretion, nor any power to determine absolutely whether a defect is irreparable; but, if not so in fact, are bound to repair, though in such manner as they may deem best, with whatever means they have or can control that are applicable thereto in view of other and proper demands upon them. Their judgment

that this bridge could not be repaired, but that if any was required at that place it must be a new one, of iron, and to cost twelve or thirteen thousand dollars, or any other sum, was not authoritative or conclusive, but only matter of evidence which must give way to that of a greater weight to the contrary, which the court seems to have found in the opinion of expert bridge-builders, and of contractors willing and ready to engage to make it substantial and reasonably durable, for all the purposes of a bridge, for a sum ranging from seven to eleven hundred dollars, according to the plan adopted and material used.

We are referred by counsel to the case of The People v. Commissioners of Highways, 32 App. 169—in which this court held substantially that the appellees could not be compelled by mandamus, against their judgment, to build a bridge in place of one that had been destroyed, over a stream which crossed the line of the highway—as being exactly parallel with this. We think the difference is that between compelling action in some way to a particular end and action in a particular way to that end—a distinction plainly attempted to be shown in that case, and very material where the respondents, as there and here, had a discretion in respect to the particular action to be taken. Here it is to "repair" in some way an existing but defective structure; there it was to provide one not then existing, and of a particular kind prescribed by the court, which was, therefore, in our judgment not within the legal scope of the writ.

The court below, in this case, conforming to the prayer of the petition awarded a writ commanding the respondents to proceed in the performance of their duty to repair the bridge, and does not interfere with or attempt, as is alleged, to control their discretion in respect to the time, means or manner of such repair.

Upon the question whether they have on hand or within their reach money enough to meet the necessary cost of such repair, the evidence may not be very clear. It appears that the town of Whitmore, with a smaller valuation of property, levied the same percentage of tax for the express purpose of

including enough to pay its proportion—one-half—of such cost and so have obtained enough, and are ready to pay it. Respondents called to testify admit that they have funds on hand for the ordinary repair of highways and bridges, without giving the amount, and say they are of opinion that when other needed repairs of the highways and small bridges in the town, and which they intend to make, shall be paid for, there will not remain enough for the purpose in question. But they do not state the estimated or probable amount of the cost of such other repairs, nor show that they have not the power by means provided by law to obtain the amount required for its share of the cost of the repairs here sought, before it will become due. It seems clear that for a year before this petition was filed they neglected to use the means they lawfully might to raise money for the repair of this bridge and intended not to repair it, but leave the people to cross the river by other bridges until a new and far more costly one should be built on the line of this highway. In so doing they mistook their duty and the extent of their discretion. The case of this bridge was as clearly within the description of " ordinary repairs " as that of any of the smaller bridges, and for aught that appears, quite as important and urgent. Knowing that it had become unsafe they should have taken measures promptly to make it safe.

We do not see that upon the point of present financial ability to repair it the finding of the court was manifestly against the weight of the evidence, or that it erred materially in any other particular. Its judgment will therefore be affirmed.