# CAMPBELL ET AL. v. WYOMING DEVELOP-MENT CO. ET AL.
## PULS v. SAME. WALLIS LIVE STOCK CO. v. SAME

(Nos. 2141-2143; March 12, 1940; 100 Pac. (2d) 124)

348

350

352

354

For the plaintiffs in error, there was a brief by *Corthell, McCollough* and *Corthell,* of Laramie, and oral arguments by *Messrs Corthell* and *McCollough.*

360

For the defendants in error in each case, there was a brief and oral arguments by *W. E. Mullen* and *J. A. Greenwood,* both of Cheyenne.

BLUME, Justice.

In July, 1932, this court decided the case of Laramie Irrigation and Power Company v. Grant, 44 Wyo. 392, 13 P. (2d) 235, wherein we held that the adjudications by the Board of Control of this state of the waters of the Big Laramie and Little Laramie Rivers respectively are prima facie correct, and that the water commissioner is authorized to regulate the waters of these rivers, and the diversion works of the several appropriators in accordance therewith. Thereupon, and in November, 1932, thirty different appropriators of water in the Little Laramie River commenced actions against the Wyoming Development Company, hereinafter called the "defendant company," and the water commissioner, to quiet title to certain water rights in the last named river and to enjoin the defendants from interfering therewith. A stipulation was entered into by the parties that three of these cases are typical of all thirty, and should first be tried. These three were tried together, and all three are here on appeal, on a joint record and but one argument. They are substantially alike and the opinion herein will dispose of them all.

The petitions filed by plaintiffs are alike except as to the lands and the amount of water appropriated. Each plaintiff alleges the ownership of certain lands in Albany County; that these lands are naturally arid

and require water to make them productive; that the predecessors of plaintiff appropriated water of the Little Laramie River for the irrigation of these lands and for domestic and livestock purposes; that the water for irrigation has been used on these lands continuously since the time of the appropriation, and that the plaintiffs and their predecessors have been in the exclusive possession and enjoyment thereof since that time; that due to flood and other conditions of the country of the Little Laramie River, it is necessary to use more than one cubic foot of water per second of time on 70 acres. It is alleged that the defendant company claims some interest in the water right of plaintiffs, but that it is subordinate to the right of plaintiffs; that about July, 1932, defendant interfered with the water right of plaintiffs and threatens to continue to do so unless restrained. Plaintiffs, accordingly, ask that their rights in and to their waters above mentioned be quieted; that the defendant company be required to set up its claim, and that its rights be declared inferior to those of plaintiffs; that defendants be enjoined from interfering with the latter, and that plaintiffs have such other and further relief as the facts may warrant. The plaintiff Puls claims a water right of 40 cubic feet per second of time to irrigate 400 acres of land with a priority as of May, 1871; the plaintiffs Campbell claim 50 cubic feet per second of time with a priority of April 1, 1878, to irrigate 1000 acres of land; the plaintiff Wallis Livestock Company claims 75 cubic feet per second of time, with a priority as of April, 1869, to irrigate 2080 acres of land.

The water commissioner filed an answer herein, and his successor was subsequently substituted as party defendant herein. It is not necessary to make any further reference to him. The defendant company filed an answer in each of the cases, admitting that it claims an interest in the waters of Little Laramie

River, and denying the other allegations of the petition. As a second defense it alleged the adjudications of the waters of Little Laramie River by the Board of Control in 1892; that no appeal was taken therefrom, and that a water right was adjudicated thereunder in favor of the predecessors of plaintiffs, namely, a water right to the predecessors of plaintiff Puls to irrigate 360 acres of land with a priority of May, 1882, and May 15, 1889; a water right for a portion of the lands of plaintiffs Campbell with a priority as of the spring of 1878; and a water right for a portion of the lands of plaintiff Wallis Live Stock Company, part with a priority as of May 1, 1882. For a third defense the defendant company alleged the adjudication of the water of Big Laramie River and its tributaries by the Board of Control in 1903, appealed to the district court of Laramie County and confirmed; that after proofs had been taken, notice was duly given by the Board of Control; that defendant under such adjudication was awarded a water right of 633 cubic feet per second of time with a priority as of May 23, 1883, and this right has been used ever since the last mentioned date for irrigation and municipal purposes. For a fourth defense the defendant company alleged that over 42,000 acres of its 58,813 acres of land has been sold to various parties, who receive a proportional share of the water right adjudicated in favor of defendant, and that they are necessary parties herein. For a fifth defense it was alleged that the cause of action of plaintiffs against defendant did not accrue within one year before the commencement of these actions.

Plaintiffs each replied, denying the allegations of the fourth and fifth defenses of the defendant company, each of them further stating that plaintiff:

"Admits that the Board of Control conducted an adjudication proceeding and decreed water rights, as alleged in the second defense; but denies that such de-

cree became or was final or binding in favor of said defendant Company.

"Plaintiff admits the allegation in the third defense that the Board of Control instituted a proceeding and decreed rights in the Big Laramie River and its tributaries, but not including the Little Laramie River or its tributaries. Except as herein expressly admitted, plaintiff denies each and every allegation of the third defense."

It appears that the Little Laramie River is a tributary of the Big Laramie River, but for the purposes of the discussion herein, these rivers will at times be referred to as "the two rivers," on account of the adjudications of these streams at different times. The appropriation of water of the plaintiffs is directly out of the Little Laramie River and tributaries; that of the defendant company out of the Big Laramie River and its tributaries. The Board of Control of this state, charged with the general supervision of the administration of waters in this state, adjudicated the water rights in the Little Laramie River in 1892, and that of the Big Laramie River in 1903. The latter was confirmed in the district court of Laramie County in 1912. The Wyoming Development Company, the main defendant herein, was organized in 1883 for the purpose of reclaiming and developing about 58,000 acres of arid land near Wheatland, Wyoming, and made an appropriation of water out of the Big Laramie River of 633 cubic feet of water per second of time. In the proceedings in connection with the adjudications of the Big Laramie River, it was found that in 1903 about 32,000 acres out of the 58,000 acres were irrigated. According to the testimony about 35,000 acres were irrigated in 1910, and about 46,000 acres in 1932. During these years the defendant company also constructed reservoirs, dams and tunnels, the cost of which was not shown. The town of Wheatland has been built upon the project, and a sugar factory has been erected near

that town. It further appears that in the early days—say from about 1870—there were large and continuous floods, which, however, during the present century gradually decreased. It is this fact, perhaps, and the large appropriation of the defendant company, which has given rise to the disputes between the appropriators from Little Laramie River and the defendant company. With these preliminary facts in mind, we can better understand the findings of the trial court.

Though a number of the findings of fact are not material herein, we shall mention them briefly. They are substantially as follows:

The plaintiffs are the owners of the lands described in their respective petitions, together with the appurtenant water right adjudicated for these lands by the Board of Control. These lands are situated near the Little Laramie River, which naturally overflows its banks. Portions of this overflow have from time immemorial spread through sloughs and other depressions over portions of the lands of the plaintiffs. The predecessors of plaintiffs, in 1872, 1873 and 1875 respectively, occupied their respective lands, and by dams or other ways spread the overflow waters over their lands, namely, over 400, 1035, and 1700 acres respectively, portions of which the plaintiffs and their predecessors have used for fifty years without interference by the defendant company. The annual period of overflow is comparatively short, varies from year to year, and has diminished in the course of years. Portions of the water returns to the stream below. The quantity of water required to properly irrigate the land in periods of short-lived flow is at times as much as one cubic foot per second of time for 10 acres. The amount of water applied to the lands of plaintiffs in the manner mentioned cannot be determined with any accuracy, nor has the amount actually used been satisfactorily shown. The adjudication of the Little Laramie River

shows the amounts decreed to the lands of plaintiff; the owners thereof have since used the amounts so decreed, and they are all guilty of laches to now claim any different or greater amount. The decree of the adjudication of the waters of the Big Laramie River in 1903, confirmed in court in 1912, shows that the defendant company was decreed 633 cubic feet per second of time; that 46,000 acres of the lands of the defendant company were irrigated prior to 1932, and lands were sold to 419 different purchasers.

The court concluded as a matter of law, that the use of flood water by plaintiffs did not affect the appropriations decreed to plaintiffs by the Board of Control, nor did the use of such flood water establish any use adverse to defendant company; that the decree of the Board of May 5, 1892, adjudicating the rights of appropriators of water in the Little Laramie River is a final decree, and plaintiffs are estopped to question the validity thereof; that the decree of adjudication of the waters of Big Laramie River is a final adjudication in favor of the defendant company to the use of the waters in Big Laramie River and its tributaries; that purchasers from the company became owners of a proportional share therein; that the parties herein are concluded as to their relative rights by that decree, and the water commissioner has the right to regulate the water accordingly. Judgment was, accordingly, entered in favor of defendants and against each of the plaintiffs, and the latter have appealed to this court.

Plaintiffs in the trial below excepted to a number of the findings of fact and all of the conclusions of law. Each of the plaintiffs filed a motion for a new trial, each containing 125 or more assignments of error. The motions were overruled, and this ruling is assigned as error here. The main contentions made by the plaintiffs will be discussed at some length; assignments of error relating to the admission or exclusion of evidence

will in most instances be but briefly noted whenever we think proper. A number of the rulings of the court thereon have, after examination, been found not to be prejudicial in any way, and will not be mentioned.

1. As indicated by what has already been stated, the plaintiffs in this case claim an early prescriptive water right in the Little Laramie River, consisting of a large number of cubic feet per second of time, in disregard of the adjudication of the waters of that stream by the Board of Control of this state in 1892. They contend that they may make such claim by reason of the fact that when the Board of Control adjudicated the rights of the Big Laramie River in 1903, the appropriators of the water of Little Laramie River whose rights had already been adjudicated, were not made parties thereto, and that hence both adjudications should be wholly ignored, and plaintiffs may establish any right which the evidence may warrant. They assert that they are justified in that contention, and were, in fact, led to make it, by our statement in Laramie Irrigation & Power Co. v. Grant, already mentioned, that

"upon the assumption heretofore made, this adjudication is not conclusive; the plaintiff and persons similarly situated still have the right to show, in the proper proceeding, either before the board of control under section 122-137 (Rev. St. 1931), or in the proper court proceeding that the adjudication of Big Laramie River, heretofore made, and prima facie correct, is not correct in fact, and that they have a water right, actually and in truth prior in right to that of the Wyoming Development Company or parties similarly situated."

A similar statement was made, under similar facts, in the case of Wills v. Morris, 100 Mont. 514, 50 P. (2d) 862. And abstractedly considered the statement is undoubtedly correct. Concretely considered, the right mentioned in the statement is, of course, subject to the rules of relevancy and materiality and to all

proper defenses which exist. In reality, counsel for plaintiffs disregarded the statement, for it referred to a co-ordination such as, or similar to, that mentioned in section 122-137, supra, and that section, as will be shown hereafter, gives no color to a claim of right such as is asserted in the case before us. The statement mentioned was doubtless inspired by the decisions from Colorado which, by reason of analogy of statutes and situation, we followed in the Grant case. The courts in Colorado hold that the decrees of the several districts taking water from the same general source are prima facie evidence as between such districts; that parties to adjudication proceedings in one district are bound to take notice of the rights adjudicated in other districts whereby rights are fixed in the same stream; that, however, an independent action may be brought by an appropriator in one district against an appropriator of another to determine the relative priorities, but that such action under a statute is limited to the period of four years. Farmers Ind. D. Co. v. Agricultural D. Co., 22 Colo. 513, 45 Pac. 444; Fort Lyon Co. v. Ark. Valley Co., 39 Colo. 332, 90 Pac. 1023; McLean v. Farmers etc. Co., 44 Colo. 184, 98 Pac. 16; Rogers v. Nev. Canal Co., 60 Colo. 59, 151 Pac. 923; O'Neill v. North Colo. Irr. Co., 56 Colo. 545, 139 Pac. 536; Fort Lyon Co. v. Sugar Co., 68 Colo. 36, 189 Pac. 252. Defendant company herein pleaded a one year's limitation of the right of action, evidently referring to section 122-136, Rev. St. 1931. That, however, would be applicable herein only to the parties appropriating water directly from the Little Laramie River. If a statute of limitation, analogous to that in Colorado, is applicable in an independent suit above mentioned, it would seem to be section 89-414, Rev. St. 1931, limiting rights of action to ten years. Whether that is applicable or not need not be decided herein and has not been argued. The holding of the Colorado courts as to

whether or not in such independent action, the plaintiff therein may ignore the previous adjudication in its favor and may establish a different priority in time and amount will be mentioned later.

As already stated, the plaintiffs pleaded a prescriptive right herein wholly independent of any adjudication made by the Board of Control. They maintain that position in this court. They state in their brief that "the true nature of the claims asserted by plaintiffs is very unmistakably set forth in the evidence, read as a whole, to be substantially the rights claimed in the petition." In accordance with that theory they have objected that the pleadings of the defendant company and the proof in this case are insufficient to admit either of the decrees of adjudication involved herein in evidence. Many pages in the brief of counsel are devoted to the contention that the decrees of adjudication by the Board of Control are not and should not be considered to be in the record at all. Counsel for the defendant company did not follow section 89-1036, Rev. St. 1931, which provides that "in pleading a judgment or other determination of a court or of an officer of special jurisdiction, it shall be sufficient to state that such judgment or determination was duly given or made" and counsel for plaintiffs contend that in view of the failure to follow that provision, no plea of former adjudication is of any value and fails to state a defense, unless it sets forth that the parties were the same, that the subject matter was the same, and that the judgment was upon the merits, and, that, if the adjudication was made by an inferior tribunal, such as the Board of Control, every jurisdictional fact must affirmatively appear by the pleading. Many authorities are cited, which sustain this view, and see Freeman on Judgments (5th Ed.) Sec. 1108; 34 C. J. 1060-1061. It may be said at once that if the Colorado decisions above mentioned, and the Grant case, are correct, these

rules have no application here. The plaintiffs by their reply admitted the existence of the two decrees of adjudication. It would seem that when that was done, the presumption of correctness mentioned in these cases then arose, making any further pleading or proof unnecessary. We have been somewhat puzzled why this obvious fact has been completely ignored by counsel for plaintiffs. It is true that the rule of prima facie correctness was applied in the Grant case to a situation involving the right of the water commissioner to regulate the distribution of water in accordance with the priorities established by the Board of Control, but if the rule is sound at all, no reason seems to exist why it should not be applied in other cases of dispute involving such rights. In any event it has been thus applied in Colorado. See Holbrook Irr. Dist. v. Arkansas etc. Co., 54 F. (2d) 840. In view of the fact, however, that this case is of great importance, and in deference to the views of counsel for plaintiffs, we have thought it best to further consider the subject of presumptions which are, or should be, applicable herein, and that consideration, we think, will, on the whole, lead to the conclusion that the rule of prima facie correctness stated in the Grant case is not as unreasonable as counsel for plaintiffs perhaps may think.

## 2. *Pleading Jurisdiction.*

This case does not involve an ordinary adjudication between one or more parties on the one hand and one or more parties on the other, and hence, the rules of pleading in such case cannot, in the very nature of things, apply in this case to the same extent, and the cases cited to us by counsel cannot be said to be exactly in point herein. The adjudication of priorities along a stream, such as involved herein, is a proceeding in rem, or quasi in rem. Weil, Water Rights (3rd Ed.), p. 1125; Robertson v. People, 40 Colo. 119, 90 Pac. 79;

Holbrook Irr. Dist. v. Arkansas etc. Land Co., 42 F. (2d) 541, 546. As pointed out in the Grant case, the term "adjudication" is generally, under our statutes relating to water rights, considered as the equivalent of "determination." The determination or adjudication in connection with the Little Laramie River was relevant herein to show, as hereinafter fully shown, that the claim of plaintiffs alleged in the petition is unfounded, and the determination of the rights in Big Laramie River was relevant for the purpose of showing the interest of the defendant in this controversy. It was necessary, accordingly, to plead these determinations. The question is to what extent. The existence of the decrees in that connection was pleaded and was admitted in the replies. Jurisdiction of the subject matter is given by statute and it was unnecessary to plead it. Freeman, supra, Sec. 1108. So that it only remains to determine as to whether or not the giving of notice should have been alleged, so as to show jurisdiction over the parties.

The origin and purpose of the rule above mentioned relating to inferior tribunals, and the good sought to be accomplished thereby, are not clear, and particularly is that true as to the extent thereof, that is to say, whether more than jurisdiction of the subject matter was required to be alleged. A discussion on that point is contained in a note to Cornell v. Barnes, 7 Hill (N. Y.), page 37 (1844). We are told by some of the English cases that "formerly the courts of Westminster Hall were much more strict in regard to the setting out proceedings of inferior jurisdictions." Rowland v. Veale, 1 Cowp. 20, 98 Eng. Repr. 944. But it became the rule as early as the reign of Charles the Second that it was sufficient in pleading a judgment of an inferior tribunal to allege that a complaint was filed and that thereupon such proceedings were had (taliter processum fuit) as to result in judgment, etc. Doe v.

Parmiter, 2 Lev. 81, 83 Eng. Rep. 460. In other words, jurisdiction over the parties was not necessary to be shown specifically. In Savage v. Field, Hardw. 186, 95 Eng. Rep. 120 (1735), in a proceeding which appears to be similar to bankruptcy, it was held that in setting up the proceeding, it was not necessary to show that notice was given, for "the notice seems to me to be only their manner of proceeding, and not an essential to found their jurisdiction; for the Act requires the notice to be proved before them upon oath, so that they are the judges thereof." And in Cleveland v. Rogers, 6 Wend. 438, the court seemingly thought that only jurisdiction of the subject matter was required to be shown in setting up a judgment in defense, although the court stated that there were dicta to the contrary. However, other cases, as already stated, have held that it must appear that the inferior tribunal has jurisdiction of the subject matter as well as of the parties. But it may be noted from what has been stated, that when courts were still in the deep and tangled forest of common law pleading, they relaxed the rigid rules in pleading a former adjudication by an inferior tribunal, so that it is not surprising to find that in the last century and the present one, the rules, though no complete uniformity appears in the decisions, have, speaking generally, became still more liberal, and has led one author to contend that there is no foundation to the distinction here under consideration between inferior tribunals and tribunals of general jurisdiction at all.

In the case at bar, the plaintiffs did not interpose a demurrer to the defense setting up the adjudications, but filed a reply, admitting them. No objection to the sufficiency of the pleadings was made at the time when the decrees of adjudication were offered in evidence, nor is any such objection mentioned in the motion for a new trial. The point is first raised in this court. It is provided by Sec. 89-1025, Rev. St. 1931, that when

an answer sets up an affirmative defense, the plaintiff may demur thereto, or file a reply. We have no statute which provides that a failure to demur does not waive the question of failure to state facts sufficient to constitute a defense, in analogy to section 89-1008, which provides that objection to the jurisdiction of the court and failure to state facts to constitute a cause of action is not waived by failure to demur or answer. This difference seems to indicate a definite intention that the two situations cannot be treated alike. The authorities are not quite uniform as to when the failure to demur will be deemed to be waived (49 C. J. 840), but it is at least the weight of authority, particularly under statutes like ours, that the defect in the answer cannot be raised for the first time on appeal, and that the answer will be held good, provided, of course, that the necessary proof is supplied at the trial. City of Evansville v. Martin, 103 Ind. 206; Purcell v. Hosey, 44 Ind. App. 444 and cases cited; Moreland v. Thorn, 143 Ind. 211 and cases cited; Hammond v. Terry, 3 Lans. (N. Y.) 186; Ayers v. O'Farrell, 10 Bosw. (N. Y.) 143; see also Mitchell v. Williamson, 9 Gill. (Md.) 711; Klein v. Fisher, 30 Mo. App. 568; Arndt v. Hosford, 82 Iowa 499, 48 N. W. 981; Elliott, Appellate Procedure, Sec. 476. Furthermore, plaintiffs admitted in the trial of the case, and admit now, that notice of the adjudication of the waters of the Big Laramie River was given, for they offered the notices in evidence and on this appeal insist that it was error for the court to exclude them from the record. That admission is good for all purposes. True, these notices so offered excluded the Little Laramie River, nevertheless they are sufficient to show that the Board of Control had jurisdiction to adjudicate the rights of the Big Laramie to the extent indicated by the notices, and thus giving the defendant company, and all persons similarly situated, a prima facie right to the water adjudicated to them

from that stream, under that adjudication, and hence showing that they have an interest in the controversy herein. Again, as to the Little Laramie River, the pleadings of the defendant company pleaded more than the mere adjudication. It was alleged that the Board of Control adjudicated a water right to the predecessors of the plaintiffs. That was admitted in the reply. This gave rise to the presumption, as will be more clearly shown hereafter, that the predecessors of the plaintiffs received notice or voluntarily appeared in the proceedings, so that the pleadings of the adjudication of the waters of that river is at most a defect which could be remedied by the evidence. The objections as to pleadings must, accordingly, be overruled.

### 3. *Proof of Jurisdiction.*

The defendants offered the decrees of adjudications of the two rivers in evidence. The plaintiffs objected to their introduction upon the ground that it was not shown that the Board of Control had jurisdiction. As mentioned previously we need not refer to the jurisdiction of the subject matter, since that was given by the statute, and limit ourselves to the consideration of jurisdiction over the parties. We have already mentioned the fact that courts have gradually become more liberal in their attitude toward adjudications of tribunals of so-called inferior jurisdiction. The rule seems to be more and more favored that if a tribunal has unlimited jurisdiction over a class of cases, it stands on the same footing as courts of general jurisdiction with reference to presumptions of regularity. That includes the presumption that due notice was given. 22 C. J. 129; see 20 Am. Jur. 172. Now the Board of Control in this state was created by the Constitution of this state. Article 8, Section 2. Under Section 122-103, Rev. St. 1931 and subsequent sections, it was given complete and exclusive jurisdiction to make gen-

eral adjudications of the waters of the streams of this state as to priority and amount to which the several appropriators are entitled. The jurisdiction of the courts is (aside from appeals) confined to determine the rights of the parties in individual cases to the extent that the Board has not acted. See Simmons v. Ramsbottom, 51 Wyo. 419, 68 P. (2d) 153; In Van Fleet on Collateral Attack, Sec. 811, the author states:

"On principle, it seems to me to be self-evident, that if the court has unlimited jurisdiction over a class of cases, its jurisdiction in such matters is general; and that when the record shows such a case, all presumptions are in its favor and that silence is conclusive. According to this idea, the proceedings * * * being unlimited and generally exclusive, should be classed with those of superior courts, and all intendments made in their favor."

In Elliott's General Practice, the author in section 151 believes that the distinction between tribunals of general and of inferior jurisdiction is arbitrary and foundationless, and in section 154 states:

"If the court has a permanent existence it is in that respect the equal of the highest; if it has original jurisdiction over a general subject in that particular its authority is not more limited than that of other judicial tribunals; if it is authorized to keep a record it is as much a court of record as any tribunal can be."

In Black on Judgments (2nd Ed.) Sec. 282, the author states:

"It is further to be remarked that although a court may be an inferior or limited tribunal, yet if it has general jurisdiction of any one subject, its proceedings in respect to that subject will be sustained by the same liberal presumptions as to jurisdiction which obtain in the case of the superior court."

We find that identical statement in 34 C. J. 545, and see 15 R. C. L. 882-883. In Bigham v. Kollman, 256 Mo. 573, 165 S. W. 1097, the court stated:

"That order or judgment is not open to collateral attack, and no direct attack is made upon it by the pleadings in this case. The county as well as the probate court, is one of inferior jurisdiction, but the ruling of some of the earlier cases as to the absence of any presumption of jurisdiction when the records of the court do not affirmatively disclose their jurisdiction have been repeatedly overruled. The law is now settled that the orders and judgments of county and probate courts, made in the exercise of their statutory powers over subjects and matters conferred upon them, are entitled to the same favorable presumption arising either from the statements or the silence of their records, which are accorded in like cases to circuit courts or others of general jurisdiction."

The rule here mentioned is sustained by a number of other authorities; District of Columbia v. Jones, 38 App. D. C. 560; Starnes v. Thompson, 173 N. C. 466, 92 S. E. 259; Moffitt v. Moffitt, 69 Ill. 641; Manuel v. Kidd, 126 Okl. 71, 258 Pac. 732 and cases cited; Road Improvement District v. Winkler, 102 Ark. 553, 145 S. W. 209; Cazort v. Improvement District (Ark.) 299 S. W. 1015; Henline v. People, 81 Ill. 269, 292; Nealy v. Brown, 6 Ill. 10, 18; Dumass v. Francis, 15 Ill. 543, 546; Kidder v. Jennison, 21 Vt. 108. The rule was applied in Farmer's Etc. Co. v. Rio Grande etc. Co., 37 Colo. 512, 86 Pac. 1042, where the court stated in part:

"To impose upon them (the appropriators) in case of collateral attack, the burden of showing affirmatively that all steps had been taken to authorize the court to render the decree relied upon would in many instances work this result (namely, hardship on them). While it is true that under the doctrine of some jurisdictions the district courts of this state, in adjudicating water rights under the statute, would be held courts of limited jurisdiction, we prefer to adopt the rule, supported by abundant authority, that our district courts in such proceedings are courts of general jurisdiction, and thus protect the claimants of adjudicated water rights from the possibility of losing the fruits

of their toil by the neglect or inadvertence of persons for which they are not responsible."

And the Supreme Court of Nebraska in the case of Farmers Irr. Dist. v. Frank, 72 Nebr. 136, 100 N. W. 286, stated, in commenting on the Colorado decisions that "the proceedings before the Board of Control in Wyoming and the State Board of Irrigation in Nebraska in determining priorities are essentially the same as the proceedings before the district court in Colorado when it sits for the purpose of adjudicating priorities, and their findings and adjudications are of like weight." While that case did not directly involve the question of presumption here considered, it goes far in showing that the Nebraska court thought that decrees of the Board of Control should be treated in the same manner as decrees of the district court in Colorado in adjudicating water rights.

In view of the fact that in the very nature of things appropriators of water from a general source of supply take more or less notice of the fact that other appropriators will claim certain priorities; in view of the modern ease of communication; in view of the fact that the Board of Control keeps a record of its proceedings which are open to the public, and in view of the fact that the Board has long been established, its doings are well known to interested parties and the importance of water rights and the administration thereof is keenly felt by all owners of land, and contact with administrative officers of water rights is constant, it will not, we think, involve any particular hardship on any water user if the regularity of the proceedings of the Board is presumed.

Furthermore, separate reasons exist why the court did not err in admitting the decrees in evidence. We shall consider that relating to the Big Laramie River first. It is clear that the plaintiffs are not in position to urge the failure to give notice, for the same reason

as already stated. They admit that notices were given, making the decree admissible at least for the purpose already stated. Moreover, the decree recites that due notice was given to the parties interested. It is generally agreed that if the record affirmatively shows jurisdiction, then the same presumptions will be indulged in favor of the proceedings of an inferior tribunal as are indulged in favor of proceedings in courts of general jurisdiction. Elliott on Roads and Streets (3rd Ed.) Sec. 325; 22 C. J. 818; Comstock v. Crawford, 3 Wall. 396, 18 L. Ed. 34; Barber v. Winslow, 12 Wend. 102; Jenks v. Stebbins, 11 John. 224; Potter v. Merchants Bank, 28 N. Y. 641, 653; Belden v. Meeker, 2 Lans. (N. Y.) 470, 473; Gehlenburg v. Hartley, 100 Kans. 487, 165 Pac. 286; Lewis v. Laylin, 46 O. S. 663, 23 N. E. 288. In the last two cited cases, it was held that such recitals should be construed liberally. See contra: McDonald v. Prescott, 2 Nev. 109, 90 Am. Dec. 517. In Potter v. Merchants Bank, supra, the court stated that "there can not be one rule of evidence for the superior and another for inferior courts * * *. The cases in the courts of other states are collected in the notes to Mills v. Duryea and McMoyle v. Cohen, 2 Am. Lead. Cas. 719 et seq., and it will be found that the courts agree that a recital in the record, of appearance or of service of process, is evidence of the fact recited, and they differ only as to whether the fact recited is conclusive or only prima facie." We think that the recitals in this case are prima facie evidence, and sufficient to show jurisdiction of the parties to the extent already mentioned.

The decree relating to the Little Laramie River contains no recital that notice was given. But independent reasons exist why the proof in that connection must be held sufficient. In the first place, it must be remembered that the decree was entered nearly fifty years ago, and courts indulge in presumptions more readily

when proceedings are ancient than in other cases. See 22 C. J. 127. It was held in District of Columbia v. Jones, 38 App. (D. C.) 560, involving condemnation for a highway, that it would be presumed after fifty years that due notice was given. See also Sebranek v. Board, 166 Okla. 295, 27 P. (2d) 632. Again, it is hard to distinguish this case, in so far as the Little Laramie River is concerned, from Cottman v. Lochner, 40 Wyo. 378, 278 Pac. 71, involving a highway proceeding. It was stated in that case, citing 13 R. C. L. 56, that in a collateral attack notice would be presumed to have been given. Again, it was admitted by the reply, fairly construed, and the decree admitted in evidence shows, that the Board of Control by the decree of 1892 adjudicated certain water rights, as to priority and amount, in favor of the predecessors in interest of the plaintiffs. The presumption is that officials have done their duty. 22 C. J. 130. It hardly seems credible that the Board would have adjudicated and awarded the rights just mentioned, unless they had the evidence submitted to them by the interested parties. They could not take the facts out of pure air. Presumptions are based, ordinarily, on experience and common sense, and we think that it should be presumed that the interested parties appeared and submitted their evidence. Whether that was pursuant to notice or without it would make no difference. They could waive the notice.

A number of other objections, technical in character, were and now are made to the introduction of the decrees in evidence. It is urged that there is a lack of authentication of the record of the decrees of the adjudications. They are certified by the Clerk of the Board of Control as true and correct copies of the decrees. That would seem to be sufficient. 22 C. J. 812-814. The decree of adjudication of the water of Little Laramie River does not show any signatures either of the president or the secretary of the Board,

and it is claimed that in the absence thereof the decree was not admissible. Counsel have failed to cite us to any authority that that was necessary. We have found none directly in point. But it is stated in 22 C. J. 827 that "the fact that a certified copy of a judicial proceeding omits the signature of the judge to the record will not render the copy inadmissible, especially if the signature of the judge was not necessary to the validity of the original record." We have found no statute requiring the record of the Board of Control to be signed by any officer, and reasoning by analogy, the authentication of the decree was not, accordingly, defective. The copies introduced in evidence are photostatic copies, and objection is made to the fact that some interlineations appear on the face of the decrees and for that reason should not have been admitted in evidence. We have looked over the decrees. The interlineations present nothing suspicious; the whole of the documents is written with pen, and we cannot expect documents thus prepared in the days when typewriters were not as usual as today to be as perfect as they would be expected to be at the present time. We do not believe that these interlineations are sufficient to prevent the admission of the documents in evidence (22 C. J. 815), especially in view of the fact that they are what is called an ancient document, that relating to the Little Laramie River being now 47 years old, and that relating to the Big Laramie River about 37 years old. It is also objected that the decrees on their face are but partial. They purport to be adjudications of the priorities and amounts of water rights in the respective streams. We think that is sufficient. Even if, in fact, not complete, that would make no difference under the provisions of Section 122-136, supra, since all appropriators were required to appear and present their claims, and as to the appropriators of Little Laramie River, they were given one year from the passage of

that section in which to present their claims, if they had not done so previously. The decree as to the Big Laramie River recites that the matter came on for hearing upon the sworn proofs of appropriation under *permits,* presumably referring to permits of the State Engineer, now required since 1890 in order to initiate a water right. The record shows that a great number of rights adjudicated originated prior to 1890. It is altogether clear that when the term "permit" was used in the decree, as referring to the initiation of the water rights, it was merely a clerical error in so far as it concerns rights not so initiated, and the objection of counsel for plaintiffs on that ground must be considered as purely technical. We think that there was no error in admitting the decrees in evidence.

### 4. *Effect of Adjudication.*

We pass, then, to consider the effect of these adjudications, and particularly that of the waters of the Little Laramie River. As already stated, plaintiffs claim a right independent thereof and assert that, in view of the fact that the two streams were not adjudicated at the same time, the situation should be treated in this case as though no adjudication had been made as to either of the streams. We discussed the legislation in connection with such adjudications at some length in the Grant case, and it is not necessary to do so again. The adjudications so made did not involve adversary proceedings in the strict sense. They were required by the legislature for the purpose of determining the rights actually existing, to cause them to be made a matter of record for the purpose of certainty, to enable the regulations to be administered easily and to avoid future strife, contention, and lawsuits. That was the policy established by the legislature. Prior to 1901 some adjudications had been made, but some of the claimants of water rights had not sub-

mitted their claims, whether purposely or otherwise. So in the last mentioned year the legislature, pursuant to the policy just mentioned, determined to make it effectual, under penalty, and enacted what is now section 122-136, Rev. St. 1931, providing, in so far as pertinent here, as follows:

"Whenever the state board of control shall, as provided by law, proceed to adjudicate and determine the rights of the various claimants to the use of water upon any stream or other body of water, it shall be the duty of all claimants interested in such stream or other body of water to appear and submit proof of their respective appropriations, at the time and in the manner required by law; and any such claimant who shall fail to appear in such proceedings and submit proof of his appropriations shall be barred and estopped from subsequently asserting any rights theretofore acquired upon the stream or other body of water embraced in such proceedings, and shall be held to have forfeited all rights to the use of said stream theretofore claimed by him; provided, that any person claiming the right to the use of water of any stream heretofore adjudicated by the board of control who, having been or claiming to have been at the time an appropriator therefrom, shall have failed to appear and submit proof of his claim shall be permitted within one year after the passage of this section but not thereafter, to apply for a hearing and an adjudication of his rights in the manner hereinafter provided * * *."

These provisions seem hardly in need of elucidation. They seem to be plain. They evince the legislative purpose peradventure of a cavil that the adjudication of a water right in favor of a claimant shall be final and binding, and that no further rights may be claimed by him over and above the award made in the adjudication. And in order to make this policy all-inclusive, it was provided that all persons who had previously failed to submit their claim and proofs must do so within one year from the passage, and barred all persons not complying therewith from claiming any rights

to the water of the stream thereafter. The statute clearly holds that the plaintiffs in this case have a water right, as to priority and amount, as awarded by the Board of Control, and no other or greater. They can have no right independent thereof as claimed in the petitions of the plaintiffs. Counsel seem to think that the provisions of Section 122-137 imply the contrary. That is the so-called co-ordination section, discussed to some extent in the Grant case. That section reads as follows:

"Whenever the rights to the use of the waters of any stream and all its tributaries within the state have been adjudicated as provided by law, and it shall appear by the records of such adjudication that it had not been had at one and the same proceeding, then in such case the state board of control shall be and is hereby authorized to give notice of the opening to public inspection of all proofs or evidences of appropriation of water, and the findings of the board in relation thereto from the stream and its tributaries in the manner and according to the provisions of § 122-111 and any person, corporations or associations, who may desire to contest the claims or rights of other persons, corporations or associations, as set up in the proofs or established by the board, shall proceed in the manner provided for in § 122-113, 122-114 and 122-115; provided, that contests may not be entered into and shall not be maintained except between appropriators who were not parties to the same adjudication proceedings in the original hearings."

This statute merely provides for a contest between the persons having adjudicated rights in one stream and persons having adjudicated rights in the other, if these rights need co-ordination. It in no way enlarges the rights of plaintiffs, in priority or amount of water, over and above that awarded to them by the Board of Control, as counsel for plaintiffs seem to think. It provides plainly, assuming that the adjudications of the Little Laramie River and the Big Laramie River were

not co-ordinated, that in a proceeding of co-ordination, plaintiffs, and other persons similarly situated, may contest the claims or rights of *other persons, corporations or associations,* in and to the waters of the Big Laramie River and its tributaries. It does not provide, as plaintiffs seem to think, that if they want to contest the rights of *other parties* in the latter River and its tributaries, their own right, as to amount and priority, can be shown to be otherwise than is shown in the adjudication in their own favor. The section does not, in other words, in any way modify the provisions of section 122-136, supra, and is in nowise inconsistent therewith. It follows that plaintiffs are estopped by the provisions of the statutes to claim any such right as is asserted in their petition. It follows, too, that the numerous exceptions in the record to the orders of the court excluding evidence bearing on that right need not be considered, since not only the testimony offered, but also that admitted in attempting to establish the right alleged in the petitions was immaterial, and had no tendency whatever to establish any water right in the plaintiffs.

The statutes, in thus limiting the rights of the predecessors of the plaintiffs—and the latter are in no better position—to the claims set up and adjudicated, did not deprive them of any constitutional rights. Weil, Water Rights (3rd Ed.), p. 118; Farm Investment Company v. Carpenter, 9 Wyo. 110, 61 Pac. 258, 50 L. R. A. 747; Farmers' Irrigation District v. Frank, 72 Nebr. 136, 100 N. W. 286; O'Neil v. Irrigation Co., 242 U. S. 20, 37 Sup. Ct. 7. They had their day in court. They had full opportunity to appear and present their claims. The Board made an award to them, with which, presumably at least, they were satisfied. They should not be permitted to say that the adjudication was ineffective. As stated in the Nebraska case just cited: "Indeed, if the determination of the State Board of Irri-

gation with reference to the priorities of appropriators are not of this final character, of what benefit or use would they be? For the Board to attempt to decide a controversy or to establish a right, when in fact, after it has acted, no right was established or controversy settled, would be a vain thing." See also Kinney on Irr. (2nd ed.), Sec. 1124; Kerr v. Burns, 48 Colo. 285, 93 Pac. 1120.

### 5. *Prescriptive Right.*

As stated, the plaintiffs claim a right by prescription. It would seem to follow as a corollary from what has already been stated that no claim of a prescriptive right can be set up by plaintiffs, at least up to the time of the adjudication of the waters of Little Laramie River in 1892. That such prescriptive right can not be set up against other appropriators directly from the Little Laramie River has been held in German D. & R. Co. v. Irrigation Co., 67 Colo. 390, 178 Pac. 896; Bieser v. Stoddard, 73 Colo. 554, 216 Pac. 707; see Holbrook Irr. Dist. v. Arkansas etc. Land Co., 42 F. (2d) 541, 546. In the first of these cases the court stated that if this were not true "then the right of any appropriator under any adjudication decree may be divested at any time by proceedings in equity and the adjudication statutes upon which the rights of every priority holder in the state are based, may be nullified and adjudication decrees made mere scraps of paper." And what is true in such case should be true throughout. While we are not certain how it would work in practical operation, it would seem, at first blush in any event, that if an appropriator's right had one priority as against one part of the appropriations of others, and another priority as against another part, it would be an anomaly and lead to confusion. In any event, no sound reason can be advanced for holding that an appropriator may go before the Board of Control, stating his priority as

to time and amount, and repudiate that statement the next day or next year and make a different claim. And his successor in interest stands in no different position. In other words, plaintiffs, who are not permitted to change their claim of priority, as to time and amount, as against the appropriators direct from the Little Laramie River, at least up to the time of the adjudication of 1892, should not be able to take a different course, merely because their dispute is with appropriators direct from the Big Laramie River. And it has been so held. The case of Fort Lyon Canal Co. v. Arkansas etc. Land Co., 76 Colo. 278, 230 Pac. 615, involved the claim of plaintiff, an appropriator whose rights had been adjudicated in one water district, and who brought an action against an appropriator whose rights had been adjudicated in another district. The court stated that "plaintiff is bound by its own decree, and cannot now claim that its own priority date should have been earlier than April 1, 1903, or earlier than August 31, 1893. We think the trial court was right in holding that plaintiff was estopped by its own decree from asserting any appropriation prior to August 31, 1893. More than fifteen years had elapsed after its decree was entered and before this action was instituted, during all of which time plaintiff had acquiesced in the adjudication. Comp. Laws of 1921, Sec. 789, limits the time to two years in which a party may seek a reargument or review of its decree." See also Holbrook v. Arkansas etc. Land Co., 54 F. (2d) 840.

We turn, then, to the period after 1892. And inasmuch as a prescriptive right is sought herein only against the defendant company, we shall confine our attention accordingly. The trial court made a finding of fact as to the use of water and the need of it by the defendant company as follows:

"8. The plaintiff and his predecessors have used portions of said waters in the manner aforesaid, free

from any restriction or interference by the Wyoming Development Company or by the Water Commissioner or other authority for the use or benefit of said Company for more than fifty years prior to July, 1932, during which period the defendant company has in different years, from about 1893 onward, experienced a shortage in the supply of water called for by its adjudicated appropriation from the Big Laramie River during some portion of the irrigation season, and during various years has requested regulation for its benefit of headgates on said stream in accordance with adjudicated priorities; to which special finding the defendants and each of them duly except."

The plaintiff did not except to this finding of the court. It will be seen at once that it wholly fails to show a prescriptive right in the plaintiffs adverse to the rights of the defendant company, for possession, to ripen into a prescriptive title, must be actual, open, hostile, exclusive and continuous for the period prescribed by statute. The court did not find that the waters used by the plaintiff were adverse to the claim of the defendant company, since the finding was confined to the use by plaintiffs of only a portion of the water of Little Laramie River. The finding states that the defendant company experienced a shortage of water in different years. There is nothing in this finding that the shortage was continuous for any prescriptive period. Counsel for plaintiffs seem to think that conclusion of law No. 11 is inconsistent with the finding of fact above mentioned. That conclusion states that "the use of flood and overflow waters from the Little Laramie River and Tributaries by plaintiff and his predecessors in interest * * * did not establish an appropriation of water in their behalf by adverse user." We fail to see any inconsistency. It is difficult to see how flood water which overflows the banks of the river could be said to be used adversely against another, at least when not controllable, as appears to be the case with the waters of Little Laramie River. In any event

there is nothing in the testimony or the findings of the court that the use of that water was adverse. Plaintiffs, accordingly, cannot be said to have acquired any prescriptive right.

We do not mean to intimate, or seem to concur in the view, that a prescriptive title to water may be acquired in this state, particularly since 1890, when the legislature enacted a law requiring the initiation of all water rights to be pursuant to a permit from the State Engineer. We do not need to enter into that question in this case. See the case of Wyoming Hereford Ranch v. Hammond Packing Co., 33 Wyo. 14, 236 Pac. 764.

Plaintiffs have assigned a number of errors as to the exclusion or admission of testimony which they claim had some bearing on the point just discussed. No exception was taken to the finding of fact No. 8 above mentioned, which is the only finding of fact which in any way relates to adverse user of water. It has been held that when no exception is taken to such finding and no assignment of error is predicated thereon, complaint cannot be made of the rulings as to admission or exclusion of testimony relating thereto. Iron Crosstie Co. v. Evans, 146 Mich. 197, 109 N. W. 254. In another jurisdiction all evidence admitted, whether properly or improperly, is merged in the court's finding; exceptions to the admission of evidence cannot cure the failure to except to the findings based thereon, but this rule does not apply to testimony which has been excluded. Kitsap County Bank v. U. S. Fidelity & Guaranty Co., 90 Wash. 12, 155 Pac. 411. We have, however, examined the errors complained of without reference to either of these rules. Some of the testimony offered or admitted relates to the regulation of water, or attempted regulation or request therefor, or interference with diversion works; some of it to the need of the defendant company for more water; some of it to the injunction which was issued in 1919. In

some instances objections to questions were sustained, but no offer of testimony was made, and we cannot tell whether the testimony would have been material or not; in some instances the witnesses were permitted to relate the fact apparently excluded during the remaining course of the examination. In no instance was the testimony admitted or rejected of sufficient importance to have led to a different judgment, either when considered singly or in combination with other testimony, so that the rulings of the court must be held to be without prejudice.

### 6. *Attack on Defendant Company.*

The plaintiffs, on rebuttal, offered to prove that the ditch mentioned in the certificate of incorporation of the defendant company of 1883 was never constructed or only partially constructed and then abandoned. We do not see the materiality of that, since the company doubtless used a different ditch, and we know of no reason why that should have been forbidden. In re Water Rights, 134 Ore. 623, 286 Pac. 563 and cases cited; Hough v. Porter, 51 Or. 318, 95 Pac. 732, 98 Pac. 106, 102 Pac. 728; In re Water Right Hood River, 114 Or. 112, 227 Pac. 1065.

Plaintiffs further offered to prove on rebuttal that the notices given in connection with the adjudication of the Big Laramie River excluded the Little Laramie River; also that the system of irrigation works of the defendant company had been materially changed since 1900 and that in 1900 the system was not sufficient or adequate to convey the amount of water claimed by it. In a more detailed way, plaintiffs offered to show that in 1900 not more than 14,000 acres of land of the defendant company were irrigated; that the capacity of its "tunnel canal" at that time was 366 cubic feet per second of time; the capacity of its "tunnel" 352 cubic feet per second of time; that the dam used by it at that

time was later abandoned, a second dam constructed and abandoned and a third dam constructed, in use at the time of the trial, the new dams being much higher than the one in use in 1900; that the tunnel was greatly enlarged since 1900, one witness stating that in 1936 he found it to be 8.2 feet wide and 9.3 feet high; another witness stating that in 1934, he found it to be 15 feet high and 13 feet wide, with the area inside somewhat larger. This, in a general way, shows the offers made by the plaintiffs.

The testimony was, over the objection of the defendants, excluded by the court, defendants claiming that the decree of the Board of Control adjudicating the waters of the Big Laramie River was thereby attempted to be attacked collaterally; that the testimony was not within the issues of the case and that it was improper rebuttal testimony. The trial court apparently took the view that it was not within the issues of the case. Thereupon the plaintiffs sought to amend their petition by alleging that the defendant company is not entitled to any waters of the Little Laramie River in excess of 225 cubic feet of water per second of time, with a priority of January 1, 1894. This offer was made after a number of days had been consumed in the trial of the case, and hence the refusal to permit the amendment cannot be held to be an abuse of discretion.

Plaintiffs in their brief argue at length that the adjudication in favor of defendant company is not binding upon them, since they were not a party thereto, and that they have a right to attack it. We are cited to numerous cases on constitutional law and on res judicata. The discussion is wholly academic. Before a party may attack the right of another, either on constitutional or other grounds, he must first show that he himself has a right which has been invaded thereby. He must have an interest which is affected. 11 Am. Jur. 748; 19 C. J. 1039, 1040; Clark v. Duncanson, 79

Okl. 180, 192 Pac. 806, 16 A. L. R. 315; Williams v. San Pedro, 153 Cal. 44, 94 Pac. 234; Davis v. Convention, 45 Wyo. 148, 154; Gianulakis v. Sharp, 71 Utah 528, 267 Pac. 1017. There is no reason why he should intermeddle with the claims of another, unless he has such interest. It is apparent at once that, if the plaintiffs rely herein upon the prescriptive right alleged in their petition, which seems to be the case, they, having failed to establish such right, as already stated, were in no position to attack the rights of the defendant company, and all of the evidence offered in that connection was immaterial. It would have been immaterial even if they had established such right, for in such case their rights would, as a matter of course, have been prior to that of the defendant company, and whether the rights of the defendant company should have a priority of 1883 or thirty years later would have made no difference. Moreover, the defendant company pleaded the adjudication of the waters of the Big Laramie River, confirmed in court, and that it was awarded a priority as of May, 1883, for the irrigation of about 58,000 acres of land. The plaintiffs, in their reply, admitted that the "Board of Control instituted a proceeding and decreed rights in the Big Laramie River and its tributaries," but denied the other allegations in the answer in that connection. It would seem that the most that can be said as to the effect of this denial is that the *existence* of *any* adjudication in favor of the defendant was questioned, calling logically only for the proof of the decree which showed such adjudication. That the appropriation by the defendant, if in fact adjudicated, was smaller than 633 cubic feet of water per second of time, or that it was of a different priority than that shown by the decree, does not seem to be questioned by the reply, and hence the defendant company was not required to anticipate such an attack thereon at the trial.

Moreover, we do not think that under the most liberal interpretation of the pleadings herein, particularly considering the general prayer for equitable relief contained in the petition, we can say that the plaintiffs might have been or were harmed by the exclusion of the testimony offered. Not every erroneous exclusion of evidence "will suffice to reverse a judgment. It is for the reviewing court to determine whether prejudice has resulted." 4 C. J. 1004; 5 C. J. S. 1042. "Where the evidence offered does not make a prima facie case, its exclusion is harmless error." 4 C. J. 1007, note 74; 4 C. J. 1009, note 3; 5 C. J. S. 1050, note 80. The evidence offered would not show that plaintiffs have been deprived of any constitutional or other right. Let us examine the claims of counsel for plaintiffs in this connection. They merely say in their brief that the testimony offered as above mentioned would "show affirmatively that plaintiffs' appropriations were in truth and in fact prior to any appropriation which the defendant company could rightfully claim." That is indefinite. We are not advised whether that is upon the theory that the initiation of the appropriation by the defendant company was for a right smaller than the amount claimed, whether it is upon the theory of abandonment or upon the theory that development after 1900 was not permissible. It would seem that it must be upon one or the other of these theories or upon a combination of them. We cannot conceive of any other. If the testimony was offered for the purpose of showing that the company did not duly initiate its full claim, it was ineffectual for that purpose. No testimony was offered as to the condition and situation of the appropriation of defendant company prior to 1900. We are left entirely in the dark concerning that. The defendant company was awarded 633 cubic feet of water per second of time. We must presume that the facts warranted that award. In 1886, section 10, Ch. 61

of the Session Laws of that year, the legislature provided that "in order that all parties may be protected in their lawful rights to the use of water for beneficial purposes," the appropriators should, on or before September 1, 1886, file in the office of the clerk of court in the respective counties, a statement of their claim under oath, unless such statement had been previously filed. Since the defendant company was given an award, such statement was doubtless filed by it, and would, it seems, constitute at least presumptive evidence that its full claim had been duly initiated (see Moyer v. Preston, 6 Wyo. 308, 44 Pac. 845), and we are unable to see how the situation in 1900, sought to be shown, could overcome it.

If the testimony was offered for the purpose of showing that part of the duly initiated right of the defendant company was abandoned, then aside from the fact that such issue could hardly be said to be in the case, the testimony fell far short, we think, of accomplishing that purpose. No testimony was offered to show any intention of abandonment, and it has been held that in order that an initiated, inchoate water right may be held to be abandoned, such intention must be shown. Pringle Falls Elec. Power etc. Co. v. Patterson, 65 Or. 474, 132 Pac. 527; In re Willow Creek, 74 Or. 592, 144 Pac. 505, 521, 522; 146 Pac. 475; 67 C. J. 982; Kinney, Irrigation & Water Rights (2nd ed.), Sec. 1102. In fact, the testimony offered, particularly taken as a whole, entirely negatives such intention. Furthermore, it would seem to be clear that the attack upon at least the largest part of the appropriation of the defendant company comes altogether too late under the doctrine of laches. While in the case of Horse Creek Conservation District v. Lincoln Land Co. (Wyo.), 92 P. (2d) 572, that doctrine was applied to abandonment of a completed appropriation, there is no reason why it should not be applied in a case like that at bar. And

again, the plaintiffs would seem to have come into court too late, if it is correct, as Weil, Water Rights (3rd ed.) page 476, states or intimates, that "actual use within a reasonable time prior to the time a controversy arises" is the test as to whether or not an appropriator should be considered as having put water to beneficial use. See the Van Tassell case, cited infra.

It may be that, according to the theory of counsel for plaintiffs, the extent of the right of the defendant company was limited to the carrying capacity of the diversion works of the defendant company as it existed in 1900 and by the amount of land then actually irrigated. But that theory seems to be answered in the negative in the case of Van Tassell Real Estate and Livestock Co. v. Cheyenne, 49 Wyo. 333, 54 P. (2d) 906. It is true that it appears therein that a decree of adjudication to which the plaintiff in that case was a party had awarded to the city a priority which, in effect, exhausted all the waters of Crow Creek. Still, while on that account and for other reasons, the case cannot be said to be controlling herein, the discussion in that case of the doctrine of relation—the right of gradual development—is applicable herein, and we need not reiterate what we said in that case. See further, 67 C. J. 991. The doctrine seems to have been expressly recognized in section 10 of the act of 1886 already mentioned, for that section provides that the notice of an appropriation previously made should state the acreage proposed to be irrigated. Section 15 of the same act provides that when irrigation works are constructed diligently, the date of priority shall be from the commencement of the construction. It remains to be determined then whether or not the defendant company abused its right of gradual development. The water must be used for a beneficial purpose within a reasonable time. But what is such time depends upon the circumstances in each case, and particularly upon

the magnitude of the enterprise and the difficulties encountered. Kinney, supra, page 1854. We have no facts before us, or which were offered to be shown herein, that the defendant company was negligent or responsible for the slow development of the project. We have before us merely the fact of slow development. Should the courts say that by reason of this fact alone, the right of gradual development of a project as large as that involved in this case has been abused as a matter of law, when some development has been made from time to time, the whole project steadily and definitely nearing completion? It would seem that they should not do so, unless it can be said that section 122-421, Rev. St. 1931, applies, which provides that the failure to use water for five years shall be considered abandonment thereof. The statute on its face seems inconsistent with the continuing right of gradual development. A conflict could hardly arise, except, perhaps, under peculiar circumstances, under our present system under which water rights are initiated by permit. Under section 122-409, Rev. St. 1931, the state engineer may extend the time for completing irrigation works for more than five years, and apparently for an indefinite time, except perhaps in case of abuse of the right of extension. He would, doubtless, have considerable discretion. See Morse v. Light & Power Co. (Or.), 84 P. (2d) 113. That provision is incompatible with the statute of non-user where the appropriator completes part of his irrigation works and irrigates part of his land but not all within five years. In other words, while there may be exceptions, the statute of non-user seems, primarily at least, to apply only to a perfected right in case a water right is initiated under a permit and not to an inchoate right, since the statute gives the state engineer the right not only to extend but also to cancel a permit. The legislature failed to enact a provision in effect similar in scope to section 122-409,

supra, and applicable to irrigation projects under construction but not completed at the time of the original enactment of that section in 1890. To conclude that it meant that such rights should have less favorable treatment than rights under a permit would, we think, be arbitrary. Mr. Elwood Mead, State Engineer, to whom most of our statutes on water rights are due, and who, doubtless, was feeling his way in determining as to what statutes would be best for this state, did not think so. The statute of non-user was first passed in 1888, and provided for a period of two years instead of five years of non-user. The very brevity of the period makes it almost inherently improbable that it was intended to apply to great irrigation projects then under construction, unless it was intended to discourage them, of which there is no evidence. According to Mr. Mead, as will be shown hereafter, very little of the appropriation of the defendant company had been put to actual use for a period of two years at the very time when the statute was passed, and there was little prospect that it would be put to actual use for the next two years. Yet it is a significant fact that up to the trial of this case, and notwithstanding the statute of non-user, the administrative officers of this state, including Mr. Mead, recognized, or acquiesced in, the right of continued further development of its project by the defendant company. This may be gathered from reports, from the adjudication in 1903, from the adoption by the Board of Control in 1928 of the confirmation thereof by the court, and from administrative acts. The district court of Laramie County in 1912, though finding that only about 32,000 acres of land had been irrigated, gave the defendant company the right to continue the development with reasonable diligence. These interpretations of the right of the defendant company during a long period of time, while not controlling, cannot be ignored. Especially is that

true in view of other facts of which we may well take judicial notice. It is common knowledge that the development of the resources of this state has been slower than in other western states, but that fact ought not to count against those who have been trying to develop them in the manner and the scale attempted by the defendant company. The project of the company seems to be one of the few really large irrigation projects in this state. The State Engineer in the early nineties, as will be mentioned hereafter, thought that all the lands under the project would be settled in a very short time. But the depression of 1893 and subsequent years came along, and probably interfered. And soon thereafter came a general movement in the United States of the population toward cities, lessening the competition for lands, thought desirable in the nineteenth century. The rural population of the United States in 1900 was 60%. Then it gradually decreased. It was 54.2% in 1910, 48.6% in 1920, 43.8% in 1930. More intensive cultivation was the rule in the present century. That was true during the World War, which, too, for a few years, saw more acreage brought under cultivation. The short-lived prosperity of the farmer collapsed after the armistice on November 11, 1918, making farming unprofitable from that time on. In addition to that came the economic and financial disaster in 1929. The facts of the last decade are still vivid in everyone's memory. We know the steps taken by the Secretary of Agriculture in the desperate hope to aid the plight of the farmer. Despite these adverse circumstances, large acreage was brought under cultivation by the defendant company. There is involved herein the question of abandonment in the broad sense of that term, and abandonments and forfeitures are not favored. Horse Creek Conservation District v. Lincoln Land Co., supra. Courts can not say that the gradual development of an irrigation project, which permits the cultivation of a

large body of arid land, gives a home to hundreds of farmers, enables the erection of a sugar factory with income to the farmers, and fosters the building of a town like Wheatland, is contrary to the policy of this state. The legislature of this state must have had knowledge of the facts in connection with the development of the project of the defendant company. As early as 1888 the Territorial Engineer in his report (page 22) referring to the project of the defendant company as embracing 58,000 acres of land, stated: "The Wyoming Development Company's canal ranks among the important irrigation works of the whole continent, not only in the size and cost, but in the originality of its plan. * * * This system of works waters one of the finest bodies of land in southern Wyoming, but although completed in 1886 has been almost unused owing to complications involving title to land." In 1894, the State Engineer stated in his report (page 25) : "The locality most talked about, and which is destined to exercise the greatest influence on the future reclamation of this state, is popularly known as the Wheatland Colony. * * * Its prominence is due to the fact that it is the most expensive system of canals yet built and the most important attempt in this state to reclaim land on a large scale. It is an effort at reclaiming land for public occupancy and, in the size and cost of the canals, is a type of what must be accomplished in order to use the water of our large rivers. * * * Rightly considered, this enterprise is an object lesson to the people of this state *.* *. The land reclaimed by the Wyoming Development Company would be a sheep range today if the building of these canals had been left to the individual settler. * * * We find this corporation, instead of hindering the settler, the most effective of agencies for attracting him to the state. Instead of abuse there is increase of population, of taxable wealth and a doubling of agricultural produc-

tion of the leading county of the state in one year." And he expressed hopes that this system, costing a half million dollars, and embracing 50,000 acres, would soon be in the hands of settlers. Such reports, and other facts in connection with the project of defendant company, which were semi-public, must have been brought to the knowledge of the legislature of this state. It must have known the attitude of, and the interpretation by, the officials above mentioned, in the face of the statute of non-user. But it did not interfere. In view of that, and in view of all that has been stated, the courts ought not, we think, take it upon themselves to declare that the right of gradual development was taken away from the defendant company as a matter of law by the mere fact that the development was slow.

In that connection it may be said that a great many objections were interposed, and are here urged, as to the testimony of J. A. Elliott, who since 1909 has been connected with the defendant company, and soon after the year last mentioned became, and has since been, the manager of the defendant company. He testified that the irrigation project of the defendant company comprised, from its beginning, about 58,000 acres of land, as shown by the records of the defendant company, part of which were cultivated by defendant company; that up to 1932 conveyances had been made from time to time to 419 settlers on the project who each received a proportionate part of the water right adjudicated to the defendant company; and that only about 14,000 acres of land of the 58,000 acres are retained by the company. Objection is made that the witness knew nothing of the facts prior to 1909, and that, further, the testimony as to the conveyances was not the best evidence. Counsel have not cited us to any authority that the respective records and documents should have been introduced in evidence under the circumstances. It is stated in 22 C. J. 978 that "evidence

relating to a matter which does not form the foundation of the cause of action or defense, but is collateral to the issue, does not properly fall within the best evidence rule, and although secondary in its character, cannot be excluded on the ground that primary evidence is obtainable." See also 22 C. J. 995. The testimony above mentioned was clearly collateral to the issues in this case. It is objected that it was not relevant, or material herein. It was apparently introduced partially for the purpose of showing that the parties who had acquired an interest in the water right of the defendant company should have been made parties herein. However, the court did not hold that, nor is the point urged here. We are inclined to think that the testimony was relevant for the purpose of showing the interest, and the continued interest, of the defendant company in the controversy herein. And if the petitions of plaintiffs be construed broadly as heretofore mentioned, then it appears to be relevant under the rule of the Van Tassell Real Estate and Livestock Company case, supra. If, however, it was not relevant, then we cannot see how the plaintiffs could have been harmed thereby, and that is equally true as to the conclusions of the court based thereon.

It is not necessary to consider whether each of the conclusions of law is correct, since no other judgment than for defendants could have been reached by the court. 4 C. J. 1056-1059.

Upon careful consideration of the record before us, we think that the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*

RINER, Ch. J., and KIMBALL, J., concur.

### ON PETITION FOR REHEARING

BLUME, Justice.

A petition for rehearing has been filed herein. In

the original opinion we discussed section 122-136, Rev. St. 1931, passed in 1901. That section provides in brief that whenever the board of control adjudicates the water of any stream or other body of water, the parties interested therein must present their claims, or they are barred, provided that if the water of any stream has been previously adjudicated, an appropriator therefrom must make his claim within one year or be barred. We held that plaintiffs, appropriators direct from the Little Laramie River, must be held barred from claiming any right other than that adjudicated in their favor in 1892 by the Board of Control. Counsel for plaintiffs, in their brief on rehearing, state: "If, therefore, the plaintiffs are bound by the rights decreed to them in that adjudication, the Development Company must also be bound, and it has no rights since it did not assert any claims within the year following the enactment of the 1901 act cited in the opinion of the court." Statements to the same effect, but in somewhat different form, are contained in a number of other places in the brief. The ingenuity of counsel seems to have hit upon a new point—at least it has never been put in the way in which it has been put now. A literal interpretation of the statute of 1901, seems at first blush to bear the meaning given it by counsel. Strict logic might lead to the result which they assert. But if we grant that the claim is strictly logical, then we are face to face with what Justice Cardoza has called a paradox of legal science. It has many times been pointed out that a proposition, if carried to its logical extreme, may lead to an absurdity. And we think that this would be true in the case at bar. The ultimate criterion is the intention of the legislature. Let us look at the practical situation. The character of claimants mentioned in the first part of the statute and those mentioned in the proviso are the same, so that we need but inquire as to what claimants are contemplated in the statute. We

pointed out in Laramie Irrigation and Power Co. v. Grant, 44 Wyo. 392, 13 P. (2d) 235, that the legislature in the eighteen nineties made small appropriations of money for the board of control to adjudicate the water rights in the state, so the Board determined to go slowly and do the best possible under the circumstances. In conformity therewith, it decided that it could not afford to adjudicate all the waters of the Laramie River. It determined to limit itself, and start with one of the tributaries of that river—the Little Laramie. Now if it had been necessary for the appropriators of the main stream—the Big Laramie River—to come in and make their proof of their appropriations, if they wanted any rights in the waters of the Little Laramie, the very thing which the board sought to avoid would have been necessary to be done in order that the rights of appropriators from the main stream might be preserved, thus leading to an absurdity. The Board thought that they could first adjudicate the waters of the Little Laramie, and afterwards the waters of the Big Laramie, which latter would include rights in the Little Laramie. The law of 1901 was not in effect when the adjudication in 1892 was made. But what was done then illustrates the situation. There is no reason to think that the Board was not confronted with similar situations after 1901. In other words, if the contention of counsel is correct, the board had no power, after 1901, to adjudicate any part of a river, no matter how long it might be, but could only adjudicate the waters of a main stream and all its tributaries at the same time, in order to give appropriators direct from the main stream their rights. That is not reasonable, and we do not believe that the legislature when it passed the act of 1901 had that in mind. Hence we think that a more reasonable interpretation of that act is that the claimants therein contemplated are those who have made an appropriation

direct from the stream, or part of a stream, which the board has undertaken to adjudicate. That becomes clearer when we consider the language of the proviso in the statute, that, if the board had heretofore adjudicated any stream, the *appropriators therefrom* should make their claim within one year after the passage of the act. The Development Company was more than an appropriator *therefrom*. Its appropriation was not so limited. It was an appropriator *therefrom* and of water from the main stream and its other tributaries which flowed into the main stream above its point of diversion as well. In other words, we may say that it was an appropriator of the water of Little Laramie River indirectly rather than directly, and indirect appropriators were not, it would seem, contemplated by the foregoing statute. In cases in which only the water of a tributary are adjudicated in the sense here mentioned, the appropriators of the main stream should, of course, be given an opportunity to contest the claims of direct appropriators. That opportunity seems to be given by section 122-112, Rev. St. 1931, but since the point is not involved herein, we need make no further comments thereon.

Moreover, the Development Company and other appropriators direct from the Big Laramie River—the main stream—did in fact, prior to 1901, make a claim to the waters of the Little Laramie River, when they filed their proof of appropriation with the Board of Control in connection with the adjudication of the waters of the Big Laramie and were given a right therein when the adjudication was made. But here again, counsel want us to adopt a literal construction of a term; they say that the Little Laramie was expressly excluded by the Board from the adjudication then made, and they complain because the court did not admit notices and other statements showing such exclusion, in evidence. The ruling was harmless. We

may treat the situation as though these statements were in evidence. Counsel state that in view of such exclusion, "the decree of the Big Laramie stops at the mouth of the Little Laramie River so far as that tributary is concerned." A literal interpretation of some of the statements would, perhaps, lead to that conclusion. One of the statements offered in evidence was a certified copy of an order of the Board of Control "directing that the rights to the use of water from the Laramie River—the rights of which have already been adjudicated—should be adjudicated." One notice offered in evidence stated that "notice is hereby given that the State Engineer * * * will begin the survey and measurement of the ditches diverting water from the Laramie River, and all its tributaries, not heretofore adjudicated." Another stated: "The attention of all appropriators of water from the Laramie River and all its tributaries, except Little Laramie, is hereby called to" the fact that the time for making proof, etc., is set (for a day certain). All notices offered in evidence either related to the measurement of the stream or to the requirement of submission of proof of appropriation. The reason for the course pursued by the Board is plain and is clearly indicated by the first of the above mentioned notices. The Board, as stated in the above mentioned order, had already adjudicated the rights of the Little Laramie. Not a single person who was not a direct appropriator therefrom had filed a claim in that proceeding, or at least had received no award. No intention may, accordingly, be attributed to the Board of permanently excluding the latter from all rights therein. The main thing preceding an adjudication of a stream is to investigate the various diversion works of the different appropriators, determine the date when they were constructed, the capacity thereof, and of ditches, and the amount of water put to beneficial use, and take proofs thereof. All that had

already been done, so far as the appropriators direct from the Little Laramie were concerned. It would have been useless to do that a second time. No measurements were necessary to be made along the Little Laramie so far as the appropriators of the Big Laramie were concerned. All the diversion works were located directly on the latter stream. The scope of the exclusion is determined by the reasons therefor and cannot be extended beyond them, as counsel would have us do. In other words, what was meant by excluding the Little Laramie—the tributary already adjudicated—was that the measurements above mentioned would not again be undertaken so far as that stream was concerned, and no further proofs were required to be submitted from the appropriators direct therefrom. It would have been more accurate if the notices had stated that the Little Laramie was excluded *in so far* as adjudications of that stream had already been made. But a mere verbal inaccuracy cannot have deceived any one. The facts were well known to all appropriators; the reasons for the exclusion must have been clear to all practical irrigators, and hence the scope of the exclusion must have been as apparent to them as it was to the Board. The appropriators direct from the Little Laramie should, it is true, have been given an opportunity to come in and object. But that does not in any way alter what we have already stated. The notices heretofore mentioned related only to measurements and proofs and affected only the appropriators other than those from the Little Laramie. It would not have been necessary, and indeed it would not have been advisable, to give notice asking the appropriators direct from the Little Laramie to come in and object, until the proofs above mentioned had all been filed. In fact, we are not at all certain that such notice was not given. See the notice of July 17, 1900, set out in Laramie Irr. & Power Co. v. Grant, supra (44 Wyo. 406, 13 P. (2d) 236), which

we mentioned but did not construe in that case, and which counsel, for purposes of their own, did not introduce in evidence in this case along with other notices. When we wrote the opinion in the Grant case, and in the original opinion, we understood the notices excluding the Little Laramie River from the adjudication of the Big Laramie in the sense above mentioned, and we did not have the remotest idea that the understanding of counsel was otherwise until we were undeceived by the unequivocal language used in the brief before us. We think that the impression which we formerly received as to the meaning of the statements of exclusion is correct. It was not necessary, in the very nature of things, to state expressly that the adjudication of the waters of the Big Laramie included the waters of the Little Laramie in so far as the appropriators direct from the main stream were concerned. As the arms and legs are part of a man's body, so tributaries are a part of the main stream. The only difference is that legs and arms may be more easily severed from the body than tributaries may be severed from the main stream. It is not necessary for a man to stand on the house-top and proclaim that his arms and his legs are an integral part of his body. Neither is it necessary for one who makes an appropriation from a main stream to proclaim that he also makes a claim to the waters of a tributary. The act of appropriation constitutes a sufficient and continuous claim which is as effectual, under well-recognized rules of law (67 C. J. 1006), as if trumpeters were annually sent into the highways and by-ways along the tributary to announce it. And what applies in that connection to the claim made by the Development Company applies to the adjudication made by the Board.

Counsel have again argued the question of prescription at length. That no prescriptive title was obtained up to the time of the adjudication of the Little Laramie

in 1892 was so clearly pointed out in the original opinion that we need not say anything more on that point. The only possible question is as to prescription since that time, if a prescriptive title may be obtained at all in this state, which we refused to decide. The court's finding of fact No. 8, set out in the original opinion, substantially was to the effect that no such prescriptive title was acquired. What counsel now ask us to do includes, in effect, that we should review that finding, and their contention includes the point that that finding was in fact erroneous and should have been broader. But they did not except to that finding, nor was an exception to the finding embraced within the motion for a new trial. It is generally held that in the absence of an exception, a finding of fact will not be reviewed by the appellate court. 3 C. J. 933; see also 3 C. J. 984, 1338, 1345. We may, however, say that the mere use of water, however long continued, does not give rise to a title by prescription. The plaintiffs were, in addition, bound to show an invasion in a substantial manner of the rights of the Development Company, and the extent of that invasion, during a continuous prescriptive period. 67 C. J. 950-52, 957. One great difficulty in the case is the indefiniteness of the testimony as to the shortage of water on the part of the Development Company. Even counsel in the brief now before us merely speak of "considerable shortage." To illustrate the testimony: One witness testified that he frequently went past the lands of the Development Company and thought that it was short of water. Another witness testified that from 1901 to 1932, the company was short thirty per cent of the time. Another witness stated that the company did not have sufficient water a great deal of the time, without stating the amount of shortage or the times. Another witness stated that "the water was almost always short the way he figured it." The witness Henry Mullen was asked as to the specific

quantity of shortness and was unable to say. The only testimony, as we now recall, which tended to show any specific amount of shortage at all was that of the witness Gillespie. But even that, upon analysis, was defective in that regard. Moreover, counsel have wholly disregarded the fact that the Development Company had and has reservoirs, which must, probably, be taken into consideration in that connection. After again carefully going over the record, we do not think that we are justified in disregarding the finding of the court above mentioned, even though we ought to review it. Nor does the testimony, which counsel say the court erroneously excluded, help in any way. Some of it will be mentioned hereafter. It merely points to some shortage without the slightest indication of the amount.

The statement in Morris v. Bean, 146 Fed. 423, 434, seems to be apropos: "As to real estate the possession is easily discovered. It is susceptible of actual proof, but here it is not shown that either the complainant or the intervener were ever entirely deprived of water. During the flood time water always reached them. They had the use of it for a time, some years longer than others. Who can divine with definiteness just what amount of water the defendants used to the exclusion of the complainant or intervener, or how long it was used to their exclusion each year?"

Furthermore, the adverse use must have been with knowledge and acquiescence of the Development Company. 67 C. J. 947-950. A man ought not to be deprived of his property unless he knows that another claims it, and knowing it, acquiesces. 2 C. J. 76. These factors are the sine qua (quibus) non of prescription. They constitute, as it were, the negative element thereof, without which the positive elements have no force or effect and round which the latter revolve. Thus, if an owner interrupts a possession—causes it to be noncontinuous—that shows that he does not acquiesce

therein. Open and notorious possession is necessary so as to convey knowledge, and give the owner an opportunity to protect his rights—to determine whether he wants to acquiesce or not. It has often been stated that open and notorious possession gives rise to a presumption of knowledge. Kinney, Irrigation (2nd ed.) p. 1879; 67 C. J. 949-950. And the rule, generally speaking, doubtless is sound. Still, circumstances should have a bearing. A man who irrigated a garden which was situated so that it could not be readily observed from a highway did not, in Britt v. Reed, 42 Or. 76, 70 Pac. 1029, acquire a title by prescription to the water used by him, though he used it for the prescriptive period. Proximity and distance and opportunity to know should have a bearing in determining whether a man knows or not, and knowing acquiesces. In the case at bar, the lands of the Development Company are situated scores of miles distant from the lands of those situated on the Little Laramie—probably approximately 100 miles away. The use of water is not as readily observed as the possession of a piece of land. So the question arises whether or not the presumption of knowledge should follow in this case from the mere open use of the water in question. No case in which the owner and the adverse user have lived at great distance from each other has been cited to us in which a prescriptive title has been upheld. Counsel have contented themselves with calling attention to the general rule, without pointing out its applicability in the case at bar. And in this connection should be borne in mind the fact that the state has officials to regulate the distribution of water. The statutes of this state seem to take from the appropriators the burden of keeping a constant watch on the appropriators above them. Water superintendents and water commissioners are appointed under our laws to do that. Sec. 122-203; Secs. 122-303-305, Rev. St. 1931.

An appropriator has the right to presume not only that appropriators above them take only the amount of water to which they are entitled, but also that the officials who regulate and distribute the waters of the state do their duty.

And these statutes would seem to have a bearing also on the rule of acquiescence. The point is forcibly suggested by the record before us. Counsel complain that the court excluded testimony to the effect that witnesses were not allowed to answer questions as to the regulation of water or questions that witnesses had been told by the water commissioner that he was regulating the water because the Development Company, on account of shortage, requested it. Ignoring the point of hearsay, it would have shown shortage of water of an indefinite amount on the part of the Development Company, but it would also have shown that the company insisted upon its rights, and by appealing to the public officials, it used the method contemplated by statute to secure and protect its rights. And, according to the evidence, that method was regularly pursued during the course of many years. On its face, in any event, such an appeal completely negatives any acquiescence, and comes in direct conflict with any presumption or duty arising under the law to the contrary when the adverse possession is open and notorious. How the conflict shall be solved depends on the policy of the law. Two aspects may be considered in that connection: (a) The appeal to the public officials may be considered merely in the nature of a protest against any adverse use. Most of the cases hold such protest insufficient to stop the running of the statute of limitations. 2 C. J. 94-95; 67 C. J. 943. But the contrary rule has also been announced in connection with water rights and with easements. 67 C. J. 943; 19 C. J. 883. In determining which of these rules is the more consonant with the spirit of our water laws, it would seem

that we should take into consideration the fact that the duty of officials to distribute water according to priority-rights is primary, and does not necessarily depend upon request. Hence arises the question whether under our laws, a prescriptive right should be able to be acquired when its basis lies in the fact that public officials have failed to do their duty. It is readily seen that if it can be, a water commissioner, in office long enough, may easily enable another to acquire such title. (b) The second aspect above mentioned is this: The bringing of a suit to interrupt adverse use is not the only method. One of the ways universally recognized to interrupt such adverse use is by self-help—by the rightful owner taking the water from the adverse user by physical force. But an appropriator is largely deprived of that method in this state under the provisions of Section 122-1205, Rev. St. 1931, which provides that "any person who shall wilfully open, close, change or interfere with any headgate or water box without authority" shall be guilty of a crime. Hence the query is pertinent whether or not an appeal to the proper public officials to distribute water according to priority, was intended as a substitute for self-help, and should, accordingly, aside from negative acquiescence, be held sufficient to interrupt any adverse use, particularly in view of the fact that a large appropriator located at the lower end of a long stream, might otherwise be compelled to be engaged in continuous litigation against one or another of the numerous appropriators above him who might from time to time attempt to deprive him of his rights. "Peace and concord," said Thomas Hobbes, "is the end of all law"—a thought applied to our water laws in several of our decisions. It may be necessary in the future to answer the points above suggested. We do not think that we are called on to do so now, although we should probably feel it

necessary to do so before we could hold that plaintiffs acquired a title by prescription. We have mooted these matters as helping to indicate that the evidence to show a prescriptive title to water rights should, particularly in a case like that at bar, be clear and decisive, and we do not think that, contrary to the finding of the trial court, it is so in the case before us. See Scott v. Fruit Growers Supply Co., 202 Cal. 47, 258 Pac. 1095, 1097.

Counsel argue again that the decrees of adjudication should not have been admitted in evidence, since the Development Company was not a party to the adjudication of the Little Laramie, and the plaintiffs were not a party to the adjudication of the Big Laramie. Again a number of cases are cited. As to the decree of the Little Laramie: The Development Company had an interest in the waters of the Little Laramie, as heretofore stated. Having such interest, it was entitled to show that the plaintiffs had no such claim to the water of that River as claimed by them. It was enabled to make such showing by the decree adjudicating the waters of that river, in view of the fact that that decree limited the rights of plaintiff. It is clear, then, that the decree was admissible in evidence. The fact that the Development Company was not a party to the decree is wholly immaterial on the point of the extent of the rights of plaintiff. The decree constitutes, as it were, the title-deed of the plaintiffs. They cannot, as we fully discussed in the original opinion, claim any more than it shows.

As to the admissibility in evidence of the Big Laramie decree: We should not have said anything further on the point, were it not for the fact, that seemingly counsel have not even now perceived the effect of the decision in the Grant case on the point again decided, in the original opinion, namely, that the adjudication in favor of the Development Company is prima facie correct. If it is prima facie correct, then, as a matter

of course, it is admissible in evidence against plaintiffs and against anyone else claiming adversely to it; it is admissible against the world to show that the grantee therein has title to the water in question according to the terms thereof, and it is as effectual as any binding judgment can be, except as to him, not a party to the same adjudication, who can overcome the prima facie effect thereof. Plaintiffs in this case attempted to overcome that effect, but they failed in the attempt. That point, and the futility in that connection, is fully discussed in the original opinion, and we do not know what more to add.

Counsel deprecate the difficulties in which the appropriators of the Little Laramie River find themselves. It appears that these are caused first by reason of the laws of the state, and second by reason of the adjudication made in 1892. But the unfortunate situation ought not to be laid at the door of this court. However willing we might be to aid, we are compelled to accept the system of water-laws adopted by the legislature, and it is not our right, as it may be that of counsel, to attempt to whittle down the effect thereof, but we must give such construction to these laws as appears to be reasonable. We think we have done so, and that we have done our duty. Counsel also suggest that the water which returns to the stream should be taken into consideration. That point was considered in Wyoming v. Colorado, 298 U. S. 573, 581, and it was stated that while some of the water used returns to the stream, a material portion is lost by evaporation and other natural processes, and that there is no way of determining with even approximate certainty how much water actually returns. In any event, the point cannot be said to be involved in this case. Whatever questions might arise in that connection could not well be decided until after it is determined, with some de-

gree of definiteness, how much of the water actually returns to the stream, and that, as a consequence, the Development Company is not injured to that extent.

We can see no good to be accomplished by a rehearing, and it is, accordingly, denied.

*Rehearing denied.*

RINER, Ch. J., and KIMBALL, J., concur.