In the Matter of the PETITION FOR CHANGE IN USE AND FOR CHANGE IN PLACE OF USE FOR THE EKXTROM NO. 1 WELL, STATEMENT OF CLAIM NO. UW–298, WITH A PRIORITY DATE OF 1920, TOWN OF PINE BLUFFS, Appellant (Petitioner),

v.

STATE BOARD OF CONTROL of the State of Wyoming, Appellee (Respondent).

No. 5614.

Supreme Court of Wyoming.

Aug. 3, 1982.

Jack R. Gage, Hanes, Gage & Burke, P. C., Cheyenne, for appellant.

Steven F. Freudenthal, Atty. Gen., Walter Perry, III, Senior Asst. Atty. Gen., and John D. Erdmann, Asst. Atty. Gen., Cheyenne, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

ROSE, Chief Justice.

Simply stated, appellant Town of Pine Bluffs seeks, in this appeal, to *increase* an adjudicated groundwater water right by utilizing the change-of-use-and-change-in-place-of-use statute, § 41–3–104, W.S.1977.[1]

1. Section 41–3–104, W.S.1977 provides as follows:

"*Procedure to change use or place of use.* "(a) When an owner of a water right wishes to change a water right from its present use to another use, or from the place of use under the existing right to a new place of use, he shall file a petition requesting permission to make such a change. The petition shall set forth all pertinent facts about the existing use and the proposed change in use, or, where a change in place of use is requested, all pertinent information about the existing place of use and the proposed place of use. The board may require that an advertised public hearing or hearings be held at the petitioner's expense. The petitioner shall provide a transcript of the public hearing to the board. The change in use, or change in place of use, may be allowed, provided that the quantity of water transferred by the granting of the petition shall not exceed the amount of water historically diverted under the existing use, nor exceed the historic rate of diversion under the existing use, nor increase the historic amount consumptively

Paraphrased, this statute says that a petition for change in use and place of use of an existing water right may be allowed, providing the quantity of water transferred will not exceed the quantity of water historically diverted under the *existing* use, nor exceed the historic rate of diversion under the *existing* use, nor increase the historic amount of water consumptively used under the *existing* use, nor decrease the historic amount of return flow, nor injure other existing lawful appropriators.

Even so, the appellant here would have this court hold that this statute authorizes the Board of Control to *increase* the water transferred over that diverted under an adjudicated *existing* use—*increase* the amount of water diverted under an adjudicated *existing* use—*increase* the historic rate of diversion under an adjudicated *existing* use—and *increase* the amount of water consumptively used under an adjudicated *existing* use.

For these purposes, § 41–3–104 cannot be utilized.

We will affirm.

### The Facts

The Town of Pine Bluffs purchased an adjudicated water right from a Mr. and Mrs. Carpenter on October 10, 1979. The deed transferred

"The right to the use of the appropriation of water from the Ekxtrom No. 1 Well diverting through the Avon Carpenter sprinkler, adjudicated in name of Avon E. Carpenter, et ux, under Proof No. UW 200 with priority of 1920 in the amount of 1100 gallons per minute which is attached for the irrigation of:

"Township 14 North, Range 60 West

| Section 10: | | | |
|---|---|---|---|
| | SW–¼ | 9 acres |
| | SE–¼ | 30 acres |
| Total | | 39 acres" [2] |

The Town, in reliance upon the provisions of § 41–3–104, then applied to the State Board of Control requesting authority to transfer the place and manner of use of its newly acquired adjudicated underground well water rights which had previously been assigned to agricultural use. The petition asked that the future use be for the Town's municipal water system.

The order of the State Board of Control, affirmed by order of the district court, approved the change of use for the Ekxtrom No. 1 Well from irrigation to municipal purposes within the town limits of the Town of Pine Bluffs, but with the following restriction:

" * * * water will be withdrawn only during the period from May 15 through October 15 of each year, at a rate of withdrawal not to exceed 1100 g.p.m., until such time as a total withdrawal of 49.42 acre-feet of water annually has been withdrawn."

The Ekxtrom Well [3] had been utilized for agricultural purposes and had, over the range of its lifetime, produced an average of 138.39 acre-feet of water which had been utilized to irrigate an average of 110 acres. However, from 1965 to date of trial, only 39 acres of land had been irrigated from the

---

used under the existing use, nor decrease the historic amount of return flow, nor in any manner injure other existing lawful appropriators. The board of control shall consider all facts it believes pertinent to the transfer which may include the following:

"(i) The economic loss to the community and the state if the use from which the right is transferred is discontinued;

"(ii) The extent to which such economic loss will be offset by the new use;

"(iii) Whether other sources of water are available for the new use.

"(b) In all cases where the matter of compensation is in dispute, the question of compensation shall be submitted to the proper district court for determination."

2.  The land description was later revised but the amount of irrigated acreage—39—remained the same.

3.  In 1977 the Carpenters applied for and received a change-of-well location because the walls of the original well had collapsed. This fact is not important to the underlying question in this case for reasons that will become apparent as the opinion develops.

well. Consistent with this use, the well was, on November 16, 1972, adjudicated by the State Board of Control for a total of 39 acres on a proof form filed and approved by Mr. Carpenter, the then owner of the right. The district court found that the "historic beneficial consumptive use" on the 39 acres of land which were irrigated by Ekxtrom No. 1 during the 15 years preceding trial, called for the utilization of 49.42 acre-feet of water annually.

### Petitioner's Contention

The petitioner contends that the Board's decision and the court's concurrence therewith are erroneous in that the approval should have been for 138.39 acre-feet annually under authority contained in § 41–3–104, W.S.1977 as that statute had been considered and interpreted by our decision in *Basin Electric Power Cooperative v. State Board of Control*, Wyo., 578 P.2d 557 (1978).

The argument is that under § 41–3–104, supra—and notwithstanding any existing water-right adjudication—the only restrictions upon the granting of the petition for more water than had been adjudicated for the well are that the order of the Board may not provide for an amount of water which exceeds

" * * * the historic rate of diversion under the existing use, * * * "

nor

"increase the historic amount consumptively used under the existing use, * * "

nor

"decrease the historic amount of return flow, * * * "

nor

"in any manner injure other existing lawful appropriators.",

and that none of these restrictions would be violated by authorizing the annual withdrawal of 138.30 acre-feet instead of the Board-authorized annual withdrawal of 49.-42 acre-feet of water. In other words—says the appellant—the conditions of § 41–3–104 would be satisfied by permitting con-

sumption from the well to exceed that which had been previously adjudicated and the Board of Control was therefore required to authorize withdrawal of the larger amount. In essence, the petitioner contends that the upper limits of a water right are not defined by the right's adjudication where it can be shown that the lifelong beneficial use is greater than the maximum allowed under the existing adjudication.

### Board of Control's Position

The Board says that it approved the change and place of use in the maximum amount authorized by § 41–3–104, W.S. 1977, supra. This is so, says the Board, because the Carpenters—the sellers and transferors, could only sell and convey the 49.42 acre-feet of water which had been utilized to irrigate 39 acres of land since that is the amount of land for which a certificate of appropriation had been issued pursuant to the Board's order of November 16, 1972. Further, it is the Board's position that, under the evidence as adduced by the petitioner's own expert,

" * * * the historic beneficial consumptive use on the 39 acres of land amount[s] to 49.42 acre-feet of water per year, * * * "[4]

### The Issue

The State says that the only issue for resolve here is:

"What was the extent of the groundwater right available for transfer at the time the matter came before the State Board of Control?"

We agree that this is the issue.

### The Law

This issue of change of place and nature of use of underground water has not come before us since the enactment of § 41–3–104 which first appeared in Ch. 170, § 1, S.L. of Wyoming 1973, and in Ch. 23, § 1, S.L. of Wyoming 1974.

The petitioner seeks here to *enlarge* an adjudicated water right under § 41–3–104

---

4. From the memorandum of the judge of the trial court.

even though this section was never designed to serve such a purpose. All we have to do is read the statute in order to see that this is so. It is entitled a "Procedure to change use or place of use." Change the use or place of use of what? The statute talks about the change of use or place of use of an owner's water right. It says:

"*When an owner of a water right* wishes to change a water right * * * *" (Emphasis added.)

from one use to another use, or from one place of use to another place—he will do certain things.

This statute only contemplates a change of use or place of use of an owner's *existing* water right. It contains no language which conceives of an enlargement of that right. The statute says that the Board may not change the use or place of use of a water right if to do so would violate the conditions identified by the statute.[5] But these conditions are the subject of the Board's consideration when "the change of use or change in place of use" is being applied for by the "owner of a water right" who seeks to change *this* "water right" from its present use or place of use to another use or place of use. They do not formulate conditions precedent to the Board's authorizing an *enlarged* water right. The water right that this statute has under consideration is the owner's *existing* water right. It says so. It uses the words, "*under the existing right.*" (Emphasis added.) In this case, the existing water right for which a change of use or place of use is sought is the adjudicated water right of the Carpenters subsequently purchased by Pine Bluffs, which authorized the irrigation of 39 acres of land. The uncontroverted hearing testimony establishes that, for the 39 acres irrigated by the Carpenter's since 1965, the consumptive use was 49.42 acre-feet per year based upon typical irrigation practices and a pumping rate of 1,100 gallons per minute during the irrigation season.

There is not a single word in § 41–3–104 which would even intimate that the Board has the authority to do anything but consider the petitioner's request to change the use or place of use of the identical water right described by the petition, which is, in this instance, the water right of which the owner is possessed. The statute is plain and unambiguous in all respects with which we are concerned in this case.[6]

We do not understand the sellers (the Carpenters) to say that they either owned or purported to sell more than their adjudicated water rights when they transferred to Pine Bluffs. Further, we do not understand Pine Bluffs to argue that it either received or should have received more than the Carpenters' adjudicated water right in that transaction. Pine Bluffs' argument is that when a water-right owner utilizes § 41–3–104 in circumstances where it can be shown that the life-span beneficial use of the water from the well exceeds the amount of water subsequently adjudicated, the Board of Control must grant a *new* right authorizing use of the water in the greater amount. The Board has no such

---

5. We said in *Basin Electric Power Cooperative v. State Board of Control*, supra:

"CONSTRUCTION OF § 41–3–104

"Section 41-3-104, [fn. 1, supra] provides that when a change in use, or change in place of use of water is applied for, certain factors must be considered by the Board. These considerations are:

"(a) The amount of water historically diverted under the existing use.

"(b) The historic rate of diversion under the existing use.

"(c) The historic amount consumptively used under the existing use.

"(d) The historic amount of return flow.

"The statute thus provides that the quantity of water transferred shall not affect the

quantities of water contemplated by these factors—

"'nor in any manner injure other existing lawful appropriators.'" 578 P.2d at 561.

6. We are aware that we talked about the ambiguity of the statute in Basin Electric, supra, but that was said when an entirely different question was at issue. There we were undertaking to determine whether the clauses pertaining to restrictions upon the quantity of water which may be imposed in granting the petition must *all* be satisfied or whether the clauses were to be considered in the *alternative*. While the statute may be ambiguous in *that* context, it is indeed not ambiguous in any context with which we are concerned here.

power under § 41–3–104. According to the provisions of that statute, the Board may utilize the historical-use standards therein provided to test whether or not the water authorized under the *existing water right*[7] may be transferred as to use and place of use—or whether some *lesser* amount is all that is available for transfer—but these historic beneficial-use standards are not available for purposes of *enlarging* an adjudicated right.

■ The Carpenters could not have transferred to Pine Bluffs a greater right than had been adjudicated to them and thus Pine Bluffs is not entitled to claim or receive any such enlarged right as is urged here. The Town only owned what it bought from the Carpenters. Nothing more. The provisions of § 41–4–310 describe the adjudication proceedings and we have held in *Campbell v. Wyoming Development Co.*, 55 Wyo. 347, 100 P.2d 124, 137 (1940) that the purpose of this section of the statute is to make clear that

"* * * the adjudication of a water right in favor of a claimant shall be final and binding, and that no further rights may be claimed by him *over and above* the award made in the adjudication." (Emphasis added.)

In *Campbell v. State*, supra, this court, in denying appellant's claim to a water right greater than that previously adjudicated, commented upon the dangers involved in disregarding the finality of a water right adjudication when we said:

"'* * * For the Board to attempt to decide a controversy or to establish a right, when, in fact, after it had acted, no right was established or controversy settled, would be a vain thing.'" 100 P.2d at 138, quoting from *Farmers' Canal Co. v. Frank*, 72 Neb. 136, 100 N.W. 286, 292.

■ Were we to permit the appellant here to enlarge its adjudicated water right through concepts having to do with the application of historical beneficial use in a change-of-use-and-change-in-place-of-use proceeding, we would be nullifying the adjudication process. This we cannot do. As to its upper limitations, an adjudicated water right is synonymous with historic beneficial use and is conclusive. As to its *minimum* requirements, the adjudicated right may or may not be the equivalent of the right authorized by historic beneficial use depending upon whether or not, in the transfer proceedings, relevant proof of such use will establish such equivalency. *Basin Electric Power Cooperative v. State Board of Control*, supra.

Notwithstanding the above, the petitioner argues that *Basin Electric Power Cooperative v. State Board of Control*, supra, will control the decision in this case, but, in making the argument, the petitioner misinterprets *Basin Electric*, supra. At 578 P.2d at 561, we examined the title of the statute as originally enacted, and said:

"While the legislative declaration of intent and purpose is not binding upon us, it is, nevertheless, worthy of consideration as an aid to construction. *Wyoming State Treasurer ex rel. Workmen's Compensation Dept. v. Niezwaag*, Wyo., 452 P.2d 214; and *McFarland v. City of Cheyenne*, 48 Wyo. 86, 42 P.2d 413. The title to § 41–3–104, supra, as originally enacted, provided:

"'AN ACT to create Section 41–4–1 of the statutes relating to procedure to change use or place of use of water right; *and providing only historic amount of water used or diverted under the right may be transferred.*' Session Laws of Wyoming, 1973, ch. 170.

---

7. Here the extent of the existing water right was established by the 1972 adjudication. Conclusiveness of adjudications of water rights is established by § 41–4–326 which provides:

"The final orders or decrees of the state board of control, in the proceedings provided by law for the adjudication and determination of rights to the use of the public waters of the state, shall be conclusive as to all prior appropriations, and the rights of all existing claimants upon the stream or other body of water lawfully embraced in the adjudication, subject, however, to the provisions of law for rehearings in such proceedings and for the reopening of the orders or decrees therein and for appeals from such orders or decrees."

*"The announced purpose, then of § 41-3-104 was to provide a procedure for those wishing to change a water right, and to place limitations on the amount of water which could be transferred."* (Second paragraph emphasis in text; third paragraph emphasis added.)

Appellant is right when it says in its brief that we held in Basin Electric that

" * * * the owner of a water right is also limited to his 'beneficial' use.",

quoting our opinion in that case, as follows:

"To the extent, then, that the historic consumptive-use limitation in this statute goes beyond the purpose of avoiding injury to other appropriators, the legislature must have intended to address the objective of assuring that water is *beneficially* used." (Emphasis added.) 578 P.2d at 566.

But Pine Bluffs' logic breaks down when it then proceeds to this conclusion:

"Hence, the Appellant interprets its burden in this case to show how much water has been historically diverted, the historic rate of diversion, how much water has been historically, beneficially, consumptively used and how much of that use can be transferred without harm to other existing lawful appropriators. On the other hand, the Board of Control appears to have taken the position that the transfer is limited to the adjudicated right and that the historic, beneficial, consumptive use is not to be considered in this case."

The trouble with this logic is this: ·

Basin Electric held that when the owner of an existing water right applies to the Board of Control for the right to transfer his water right's use or place of use, the authority to transfer the right is contingent upon the various historic beneficial-use factors which are, in Basin Electric, set out in particularity. The question for decision in a change-of-use-and-change-in-place-of-use proceeding is: Will the owner be permitted to transfer his entire adjudicated-water-right allotment or will he be compelled to transfer something less than that in instances where the historic beneficial use is shown to be less than the adjudicated right?

We said in Basin that the amount transferable would be determined by the amount of the water right that had been historically beneficially used even though the right had previously been adjudicated for a *greater* amount. We did not, however, even intimate in Basin Electric that the change-of-use statute (§ 41-3-104, supra) could be utilized to *enlarge* a water right over and above that adjudicated. Nor is our attention called to any authority which holds that an adjudicated water right could be *enlarged* through the application of an historic beneficial-use concept to a change-of-use-and-change-in-place-of-use statute containing such provisions as we find present in § 41-3-104. The only way to obtain water in the first instance—or to obtain additional water—in this state, is to comply with the statutes which pertain to the acquisition of water rights. This cannot be accomplished through the change-of-use-and-change-in-place-of-use statutes incorporating concepts of historical beneficial use.

There is another very relevant distinction between this and the Basin Electric decision. Underlying Basin Electric is the waste concept. We were concerned in that case with whether or not the appropriator had wasted a part of his adjudicated right. It was with this consideration in mind that we tested the owner's right to transfer all or only a part of an appropriation, depending upon the historic beneficial use of the water. Such a consideration is, of course, not relevant where the issue is whether or not the court will permit an *enlarged* use of a water right through the utilization of the change-of-use-and-change-in-place-of-use statute. Within the confines of this very pertinent underpinning for the decision in Basin Electric, that opinion is simply irrelevant to the issues raised in this appeal.

In final analysis, we hold here that the historic-use concept referred to in § 41-3-104, supra, is applicable only within the confines of an adjudicated water right—there to be considered for the purpose of ascertaining whether or not the historic beneficial use of the right is as

great as or less than the amount contemplated by the adjudication by which it was originally authorized. The concept was not intended to permit the enlargement of a water right, because, as in this case, the upper limit of a water right is that amount which has been adjudicated. *Campbell v. Wyoming Development Co.*, supra.

The trial court's decision is affirmed.